**UNITED STATES of America**

v.

**Shashi SHAH, Defendant.**

**No. CRIM. 98–235–02.**

United States District Court, District of Columbia.

May 12, 2003.

William J. O'Malley, Jr., United States Attorney's Office for the District of Columbia, Washington, DC, for United States.

George J. Lane, Washington, DC, for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the Court on Defendant Shah's memorandum in aid of sentencing [638], defendant's objections to the presentence report [655], and the government's response [665]; defendant's omnibus motion for sentencing under 18 U.S.C. § 3355(f) [654]; and defendant's motion for leave to withdraw guilty plea [639], the government's omnibus response [662], and defendant's reply [667].

### I. Background

Shah is one defendant of many in the multinational drug importation and distribution conspiracy charged in this case. The Court presided over two trials of various co-defendants, the first from October 1999 to January 2000 and the second from October to November of 2000, which resulted in convictions and lengthy sentences. Shah pled guilty before the first trial and entered into a cooperation agreement with the government. Two of the relevant terms of the agreement were that Shah was to cooperate "truthfully, completely, and forthrightly" with the government, Plea Agr. ¶ 6(a), and that Shah agreed "not to commit any criminal violation of local, state or federal law" while cooperating, id. ¶ 6(e). While incarcerated in the D.C. Jail during the period of his cooperation, Shah approached a fellow inmate to arrange for drug importation and distribution through a Nepalese heroin supplier, to be effected by non-incarcerated associates of Shah and the fellow inmate. Shah had denied knowing this supplier during his FBI debriefings. Unbeknownst to Shah, the fellow inmate was cooperating with the government, and taped several conversations between Shah

and his associates. Because of this conduct and its effect on Shah's credibility, the government determined not to call him as a witness in the second trial in this case. The government also determined that Shah had breached his plea agreement both in attempting to violate the law by seeking to arrange a drug deal, and in not responding fully and truthfully to FBI inquiries regarding the Nepalese supplier. Thus, the Departure Committee at the United States Attorney's office decided not to issue a departure letter for Shah.

Upon realizing that he is subject to a lengthy sentence that will reflect the criminal activity to which he had admitted in the course of his cooperation, rather than the fraction of that sentence defendant hoped would be imposed based on a government departure motion, defendant cries "Foul." Defendant takes a bifurcated approach in seeking to reduce his sentencing exposure. Shah seeks first and foremost to withdraw his plea of guilty. The Court takes note of the Plea Agreement's numerous exhortations that defendant may not withdraw his plea. Plea Agr. ¶ 6(e) (no withdrawal for defendant's breach); ¶ 7 (no withdrawal for government decision not to file 5K1.1 departure letter); ¶ 12 (no withdrawal for harshness of sentence imposed). Failing withdrawal, defendant advances myriad arguments opposing the Guidelines calculation presented in the Presentence Investigation Report (PSR) and seeks departure on various grounds.

Defendant pled guilty and agreed to cooperate with the government, and for this cooperation expected to receive a sentence less than 63–78 months. Shah Affidavit attached to Motion to Withdraw Guilty Plea [639] ¶ 11. Defendant believes he is entitled to a lenient sentence, period. Upon a determination that Shah did not keep the commitments he made in the plea agreement, the government declined to file

a motion for departure for substantial assistance under § 5K1.1 of the Guidelines. Shah is now facing a sentence of 292 to 340 months based on his Guidelines offense level. Defendant seeks the benefit of his bargain, creatively urging various methods through which the Court can reward him where the government did not. This the Court declines to do.

## II. Plea Withdrawal

The most serious and viable claim presented by Shah that he should be permitted to withdraw his guilty plea is an allegation of ineffective assistance of counsel during plea negotiations and at the plea colloquy. All Shah's arguments hinge on the validity of the plea agreement and the conduct of the plea colloquy. The PSR is based on the government's proffer of evidence at the plea hearing, which in turn was based on Shah's own admissions. If the plea agreement, and thereby the government's proffer, and the hearing at which the plea was accepted were valid, defendant cannot be heard to complain about the inclusion of facts *to which he admitted* in the Guidelines calculation. *See, e.g., United States v. Leachman,* 309 F.3d 377, 383–84 (6th Cir.2002) (by pleading guilty defendant waived the right to have sentencing factors, including the amount of drugs, proven to a jury beyond a reasonable doubt). Likewise, if the plea agreement, proffer, and colloquy were valid, Defendant has no legitimate basis for withdrawing his plea.

### A. Standards for Plea Withdrawal

██ A Court may permit a defendant to withdraw a plea of guilty if it is "fair and just" to do so. *United States v. Barker,* 514 F.2d 208, 219 (D.C.Cir.1975). Withdrawal is to be liberally granted, but it is not a matter of right. *United States v. Ford,* 993 F.2d 249, 251 (D.C.Cir.1993).

The D.C. Circuit revisited the issue of plea withdrawal in *United States v. Cray,* 47 F.3d 1203 (D.C.Cir.1995). It promulgated a three-part inquiry for examining the propriety of permitting a defendant to withdraw a guilty plea:

First, a defendant generally must make out a legally cognizable defense to the charge against him. Second, and most important, the defendant must show either an error in the taking of his plea or some "more substantial" reason he failed to press his case rather than plead guilty. Finally, if those two factors warrant, the court may then inquire whether the Government would have been substantially prejudiced by the delay in going to trial.

*Id.* at 1207. A defendant cannot satisfy the first factor-a claim of legal innocence-by a mere general denial, "he must affirmatively advance an objectively reasonable argument that he is innocent." *Id.* at 1209. Furthermore, "[i]f the movant's factual contentions, when accepted as true, make out no legally cognizable defense to the charges, he has not effectively denied his culpability, and his withdrawal motion need not be granted." *Barker,* 514 F.2d at 220.

██ To highlight its emphasis on the second factor, the Court noted that "a defendant who fails to show some error under Rule 11 has to shoulder an extremely heavy burden if he is ultimately to prevail." *Cray,* 47 F.3d at 1208. It observed, "we have never held that a district court abused its discretion in denying a motion to withdraw a guilty plea where the defendant failed to show some defect in the taking of his plea under Rule 11." *Id.* at 1207. If the plea colloquy was not conducted in "substantial compliance" with Rule 11, the defendant should "almost always" be permitted to withdraw the plea. *United States v. Ford,* 993 F.2d 249, 251

(D.C.Cir.1993). For instance, the record of the plea colloquy must lead a reasonable person to believe that the defendant understood the nature of the charge, such as through a judicial recitation of the material details of the charge. *United States v. Ahn,* 231 F.3d 26, 33, 35 (D.C.Cir.2000). An understanding of the crime to which a defendant is admitting guilt is a "core consideration" of Rule 11. *Ford,* 993 F.2d at 253. Where the defect in the plea is not one that would appear on the record, an evidentiary hearing may be appropriate. *Cray,* 47 F.3d at 1208–09.

### B. Shah's Plea

■ The most important issue with regard to Shah's plea withdrawal motion, then, is whether the Rule 11 plea colloquy was properly conducted. If it was, Shah must "shoulder an extremely heavy burden if he is ultimately to prevail." *United States v. Cray,* 47 F.3d 1203, 1208 (D.C.Cir.1995). Federal Rule of Criminal Procedure 11 sets out various safeguards to ensure that a guilty plea is entered intelligently and voluntarily. The Court in this case complied with all those requirements, including: informing defendant of the nature of the charge (R. 11(c)(1)), Tr. at 5–7; the minimum and maximum penalties (R. 11(c)(1)), Tr. at 7; the possibility of Guidelines departure (R. 11(c)(1)), Tr. at 8–9; the right to plead not guilty, go to trial by jury with assistance of counsel with confrontation and cross-examination of witnesses and Fifth Amendment right not to testify (R. 11(c)(3)), Tr. at 3–4; that a guilty plea means no trial will be had (R. 11(c)(4)), Tr. at 4; that a defendant's statements at the plea colloquy may be used in a perjury or false statement prosecution (R. 11(c)(5)), Tr. at 2–3; ascertaining that the plea was voluntary and not the result of force or threats (R. 11(d)), Tr. at 9; accepting the plea agreement in open court (R. 11(e)(2)), Tr. at 2, 9–11; and inquiring

into the factual basis for the plea (R. 11(f)), Tr. at 11–12. The Court was fully solicitous of defendant, inquiring "Has anyone made any prediction or promise as to what sentence I'll give you in this case," to which Shah answered no, Tr. at 11, asking if he was satisfied with former counsel's representation of him, to which Shah answered yes, Tr. at 3, and giving the defendant an opportunity to raise any other concerns he might have, Tr. at 12.

As in *Cray,* Shah admitted to each element of the crimes charged, Tr. at 6–7, 11–12, fully agreed with the government's proffer, Tr. at 11–12, confirmed that he had not been threatened or coerced, Tr. at 9, and affirmatively answered the Court's questions after being told that they were posed to ascertain that the plea was entered voluntarily, Tr. at 2–5, 12–13. *Cray,* 47 F.3d at 1205. Unlike in *Ford,* here the Court explained the nature of the charges against Shah by reading the information, Tr. at 5–7, and established the factual basis by accepting the government's proffer and ascertaining that Shah had read it and his signature on the bottom was genuine, Tr. at 11–12. *United States v. Ford,* 993 F.2d 249, 252 (D.C.Cir.1993). Furthermore, the government specifically stated on the record that the plea agreement provided that Shah accepted responsibility for the death of Raymond Cruz and for 10 to 30 kilograms of heroin. Tr. at 10. Shah did not contradict these representations. This examination of the transcript reveals that "[t]here is simply no room in this record for doubt that [defendant's] guilty plea was attended by all the required procedural safeguards." *Cray,* 47 F.3d at 1208.

### C. Ineffective Assistance of Counsel

■ Attached to his motion to withdraw his plea [639] was Shah's affidavit, as well as that of his former attorney. Shah

argues that his former attorney provided ineffective assistance of counsel, thus entitling him to withdraw his plea. To make out a claim of ineffective assistance of counsel sufficient to withdraw a guilty plea, a defendant must show that counsel's performance was deficient, and that the deficiency prejudiced the defendant. *Cf. Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (discussing standards for overturning results of trial). Shah alleges several areas in which former counsel was deficient: by failing to investigate, by telling Shah not to worry about the alleged drug quantity overreaching in the government's proffer at the plea hearing, by permitting Shah to be debriefed without the presence of his counsel, and by permitting Shah to plead despite knowing of the existence of an unspecified "meritorious defense."

 Counsel is deficient if the representation falls below an objective standard of reasonably effective assistance. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. The errors made by counsel must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. Even if this stringent standard is met, the defendant must prove prejudice. This means that "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Gaviria,* 116 F.3d 1498, 1512 (D.C.Cir.1997). In the plea context, this means that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

### 1. Failure to Investigate

 Shah urges that former counsel's failure to investigate the offense constitutes ineffective assistance of counsel. Counsel generally has a duty to investigate a case if necessary; in the context of a guilty plea this is because to effectively advise a client requires familiarity with the facts. *Herring v. Estelle,* 491 F.2d 125, 128 n. 6 (5th Cir.1974) (" 'Effective counsel includes familiarity of counsel with the case and an opportunity to investigate it *if necessary* in order meaningfully to advise the accused of his options.' " (emphasis added) (citation omitted)). However, the need to investigate can be obviated where, for instance, the defendant can supply all the information needed. *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052 ("For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether."). In this case, the defendant pled guilty and supplied the government (and presumably counsel) with all the information relevant to his case. Unless counsel must presume that a client is lying, independent investigation is not generally necessary in such a situation. Thus, counsel's failure to investigate the case beyond the facts supplied to him (and the government and ultimately to the Court) by his client was not so below the par for representation as to "undermine[ ] the proper functioning of the adversarial process." *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052.

While it was not perhaps best practice for an attorney representing a client charged with possession of a controlled substance on the scale seen here not to investigate the charges independently, it did not fall below an objective standard of reasonableness. This is further supported

by *Strickland*'s rule that counsel's decisions must be evaluated *as of the time they were made.* *Id.* at 690, 104 S.Ct. 2052. When counsel was advising Shah to cooperate and plead, all parties anticipated that Shah would fully and truthfully cooperate with the government, refrain from breaking laws while cooperating, and otherwise comply with the terms of the plea agreement. For his cooperation, all parties anticipated that Shah would receive a downward departure under 5K1.1. Once a Court grants a 5K1.1 motion, the Court is free to impose any sentence that is fitting, and thus any disparity between the amount of drugs Shah now insists he distributed and the amount he previously informed the government he had distributed would not carry the same weight it carries in the Guidelines scheme. Thus, as a practical matter, counsel reasonably made the tactical decision not to enter into an extensive investigation to flesh out this disparity. Counsel had no way of knowing that Shah would breach his agreement, thus exposing himself to the Guidelines range he faces today.

▮▮▮ Even if the failure to investigate was an objectively unreasonable trial strategy by former counsel, defendant has not proven prejudice. "Where the alleged error is failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a tri-

al." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Although current counsel does not point out what exactly former counsel failed to investigate, the Court will presume that the exact drug quantities and Shah's involvement in Nuri Lama's drug-dealing behavior, to which counsel devotes copious briefings, is what Shah is referring to. Counsel never asserts that Shah was not responsible for some heroin, and indeed acknowledges that the Court's findings of fact in the previous trials in this case indicate that over 6 kilograms can be attributed to Shah.[1] While this difference of four kilograms changes the sentencing range under the Guidelines, this is not the type of evidence that would change the outcome of a trial. *Compare United States v. Baynes,* 622 F.2d 66 (3d Cir.1980) (failure to investigate exculpatory evidence that would negate the government's only evidence against defendant warrants evidentiary hearing on ineffective assistance of counsel). A jury can be presumed just as likely to vote guilty for a defendant involved with six kilograms of heroin as with ten. Likewise, counsel's advice to plead guilty had nothing to do (according to the briefing) with drug quantity, but with the defendant's and former counsel's hope that defendant would receive a generous sentence reduction for his cooperation. Thus, a difference in kilogram weight of heroin would not have affected counsel's advice that defendant plead guilty.

### 2. Plea Colloquy Concerns

▮▮▮ The above reasoning applies equally to Shah's complaints that counsel told him to accept the drug amounts in the

---

1. The Court emphasizes that because the previous trials were focused on the behavior of defendants other than Shah, the previous trials did not necessarily explore the full extent of Shah's heroin involvement. Thus, the previous trials do not set a ceiling on the drug quantity relevant to Shah's sentencing.

government's proffer when Shah allegedly conferred with counsel during the plea colloquy to protest the amounts. Counsel is presumed to have acted out of a sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Here counsel and Shah were proving to the government and the Court that Shah was cooperating fully, completely, and eagerly with the government. To protest during the colloquy that the government's proffer, which was based on information supplied by Shah during the course of his cooperation, inflated Shah's role would expose Shah to the conclusion by the government and the Court that Shah had lied to the government, and thus endanger his 5K1.1 motion. Thus, it can be presumed that counsel was acting out of a sound trial strategy and his actions were objectively reasonable.

■ Furthermore, Shah had a duty to deal truthfully with the Court during the colloquy, and this included his agreement that the government's plea colloquy represented the true state of facts of his offense. Tr. at 11–12. The Seventh Circuit faced this dilemma in *United States v. Stewart,* 198 F.3d 984 (7th Cir.1999), a case similar to this one, in which a defendant sought to withdraw his guilty plea on the ground that not all the drugs to which he had admitted possession were actually in his possession. The defendant urged that some of the drugs belonged to his brother, that he had never touched them or had any possessory interest in them, and that he had admitted to their possession during the plea colloquy only because he believed that he was going to get a 60 month sentence and be eligible for boot camp, and thus had no reason to deny possession. *Id.* at 985–86. The court queried why, when the defendant already had an opportunity to layout the truth before the court, "should he now receive an opportunity to contradict himself under oath, and thus to violate 18 U.S.C. § 1623(c), the inconsistent declarations statute?" *Id.* at 986. The court found that "[a] defendant's protestations that statements freely made under oath when entering the plea were a pack of lies is not a 'fair and just reason' to start anew, and that a belief that a defendant would get a low sentence does not confer license to lie to a judge." *Id.* at 987. The Court admonishes Shah as the Seventh Circuit admonished Stewart: "Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard. A defendant has no legal entitlement to benefit by contradicting himself under oath Thus when the judge credits the defendant's statements in open court, the game is over." *Id.* The same prejudice analysis as above is relevant to this factor, and again shows that even if the alleged drug disparity exists, the outcome of conviction would be the same.

### 3. Debriefing without Counsel

■ Shah's third basis for his claim of ineffective assistance of counsel is that counsel permitted Shah to be debriefed by the government without counsel's presence. The plea agreement states that Shah "knowingly and voluntarily" waived the right to have his counsel present for interviews with law enforcement and government attorneys. Plea Agr. ¶ 8. The plea agreement states that if Shah and his counsel wish to change this state of affairs, counsel need only send a notice in writing to the government and all future debriefings would be held with counsel present, and this would have no effect on any other terms and conditions of the agreement. *Id.* Shah's plea agreement is based on the standard form used by the U.S. Attorney's office in the District of Columbia. Thus, the Court can deduce that waiver of the right to counsel at debriefings is fairly

common practice. Again, it must be emphasized that at the time the decision to waive counsel's presence was made, Shah and his counsel were focused on procuring a 5K1.1 letter in Shah's favor, and cooperating through waiver of counsel presumably enhanced the appearance of Shah's cooperation, and thus advising Shah to sign the waiver did not fall below the standard of objective reasonableness.

 The prejudice analysis is particularly relevant to this claim. Shah does not explain how counsel's absence from the debriefing sessions prejudiced his decision to plead guilty, and unlike the other grounds the Court cannot supply for Shah a plausible reason why it would. When Shah submitted to debriefing it was presumably with the intention of turning state's evidence and cutting a deal. Where the decision to plead has already been made, it is illogical to claim that but for counsel's absence at the debriefing sessions, defendant would not have pled guilty. *See Hill,* 474 U.S. at 59, 106 S.Ct. 366 (prejudice requires showing that absent the error defendant would not have plead guilty but would have gone to trial).

### 4. "Meritorious Defense"

 Shah's final ground in claiming ineffective assistance is that former counsel advised him to plead guilty despite knowledge of the existence of a "meritorious defense." In its response, the government pointed out that this bald assertion, without elaboration of what that defense might be, did not present any ground for this Court to find ineffective assistance of counsel and permit defendant to withdraw his plea. In his reply, defendant asserts that he has no responsibility to supply the Court with the details of this "meritorious defense" at this stage of the proceedings, but "merely has to assert his factual innocence which may be that he was not there for all transactions complained of in the plea proffer." [2] Defendant's Reply [667] at 19 n. 26.

The government has the better side of this argument. The D.C. Circuit has explicitly stated that a defendant "must do more than make a general denial in order to put the Government to its proof; he must affirmatively advance an objectively reasonable argument that he is innocent." *United States v. Cray,* 47 F.3d 1203, 1209 (D.C.Cir.1995). This is because "[t]here are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal." *United States v. Barker,* 514 F.2d 208, 221 (D.C.Cir.1975). Further, "[a] guilty plea is very typically entered for the simple 'tactical' reason that the jury is unlikely to credit the defendant's theory or story." *Id.*

Perhaps as an attempt to hedge his bets, however, defendant posited a legal defense to the charges against him in his reply.[3]

---

2. The defendant's mysterious assertion that his meritorious defense *may* be that he was not present at some of the transactions listed in the plea proffer is not sufficient to claim his innocence. First, it contains no details. Second, it ignores that defendant is charged with conspiracy, which does not require that defendant be physically present for all acts performed in furtherance of that conspiracy. And finally, it is not a claim of innocence, it is a claim of "less guilty." A defendant who concedes that this Court has already heard evidence on which two juries voted to convict

other defendants that he was involved in the importation, possession, and distribution of over 6 kilograms of heroin is not a defendant claiming innocence.

3. It is unclear whether the "claim of innocence" requirement of *Barker* and *Cray* is satisfied by the assertion of a "technical" reason for acquittal. *Barker* uses the term "legal innocence," but in the next sentence states that because the defendant "has not effectively denied his culpability, ... his withdrawal motion need not be granted." *Barker,* 514

Defendant was originally charged with 335 grams of heroin, the total amount distributed in controlled buys with government participation. The indictment charging 335 grams was filed July 7, 1998. On August 13, 1998, the government sent to defendant's counsel a letter memorializing the terms of Shah's agreement to engage in an "off-the-record" debriefing, which included an immunity provision that the government would not use the information provided by Shah against him in a criminal proceeding. On October 16, 1998, the date of Shah's plea, a superseding information was filed against him,[4] charging conspiracy to import and conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin. Also on October 16, 1998, the Court fiated the plea agreement into the record.

Shah argues that the government breached its immunity agreement by using the evidence supplied by Shah during the off-the-record debriefing to file the superseding information. The August 13, 1998 immunity letter states, with two exceptions not relevant here, that "no statements made by or other information provided by your client during the 'off-the-record' debriefing(s) will be used directly against your client in any criminal proceeding." Gov't Omnibus Response [662] app. A at 1. Shah seizes on this statement to argue that the superseding information, which changed the heroin amount from 335 grams to one kilogram or more, was improperly based on the immunized informa-

tion Shah had provided during the off-the-record debriefing. *See, e.g., Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) ("[The burden of proof] imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony."); *but see United States v. O'Brien*, 853 F.2d 522, 526–27 (7th Cir.1988) (defendant's conclusory, unsupported allegation that the government used information gained through defendant's cooperation pursuant to plea agreement to charge him with additional offenses cannot support a reversal). The government disputes this contention, noting that a large body of evidence supports the superseding information, including wiretap evidence, physical surveillance, the admissions of a codefendant, and drug seizures. Gov't Response [665] at 3.

■■■ Shah's argument is irrelevant for three reasons. First, by virtue of his guilty plea Shah admitted *to the Court* the extent of his criminal behavior. Whether information was previously immunized became moot when Shah appeared on the record to reveal the amount of heroin in which he had participated in importing and distributing. It should be noted that the superseding information, the plea agreement, and the guilty plea were all entered on the same day.

■■■ Second, even if the government used immunized information to file

---

F.2d at 220. *Cray* requires a defendant to "affirmatively advance an objectively reasonable argument that he is innocent." *Cray*, 47 F.3d at 1209. These cases seem to lean toward a requirement that a claim of innocence be a claim of factual innocence, rather than a claim that despite defendant's violation of the law, protection of his rights necessitates an acquittal. Because of the ambiguity, however, and the importance of Due Process to our

criminal justice system, the Court will entertain Shah's legal argument for acquittal.

4. Defendant's plea was to a superseding information, rather than an indictment. Defendant's new counsel notes that he has never received a copy of defendant's waiver of indictment. A waiver of indictment signed by Shah was executed on October 16, 1998. A copy has been forwarded to defense counsel.

the superseding information, the use of this information was harmless to Shah. The superseding information was filed October 16, 1998[8]. *Apprendi* was not issued by the Supreme Court until 2000. Before *Apprendi*, the indictment did not have to specify the amount of drugs on which the defendant would be sentenced, because at that time drug quantity was a sentencing factor that did not have to be proven to a jury beyond a reasonable doubt, but was determined by a preponderance of the evidence at the sentencing phase. *See, e.g., United States v. Sklar,* 920 F.2d 107, 112 (1st Cir.1990) ("[T]he government must prove facts central to increasing a defendant's offense level by a preponderance of the evidence."). Therefore, under the pre-*Apprendi* regime, the superseding information did not affect the punishment for which Shah would be eligible or have any other effect on the proceedings. *Apprendi's* holding does not relate back to the date of Shah's superseding information. A defendant who admits his guilt "does so under the law then existing," regardless of whether "he might have pleaded differently had later decided cases then been the law." *McMann v. Richardson,* 397 U.S. 759, 774, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Again, "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Brady v. United States,* 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). It is for this reason that Shah was not provided with ineffective assistance of counsel when former counsel failed to object (however unwarranted the objection) to the alleged use of immunized information in the superseding information. Counsel is not required to look into the future and predict what the Supreme Court might decide years after the plea. *Brady,* 397 U.S. at 757, 90 S.Ct.

1463 ("[A plea] is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law . . . but later pronouncements of the courts [changed the law]."). Likewise there is no prejudice to defendant from counsel's "error." A successful challenge to the superseding information would not have changed the sentencing range Defendant faces, or his prospects in front of a jury.

■ Finally, this argument ignores the plea agreement, in which Shah waived this immunity as to sentencing, the only time at which (in the pre-*Apprendi* world in which the agreement was entered) the drug quantity would make a difference. Plea Agr. ¶ 24. The plea agreement states that Shah is waiving his rights under Federal Rule of Criminal Procedure 11(e)(6) and Federal Rule of Evidence 410, and "[a]s a result of this waiver, your client understands and agrees that any statements which are made in the course of your client's guilty plea or in connection with your client's cooperation pursuant to this plea agreement will be admissible against your client for any purpose in any criminal or civil proceeding if your client's guilty plea is subsequently withdrawn." Plea Agr. ¶ 13. It further provides that if Shah fails to perform the plea agreement, "the government will be free to use against your client, directly and indirectly, in any criminal or civil proceeding any of the information or materials provided by your client pursuant to this agreement or during the course of debriefings conducted in anticipation of the agreement, regardless of whether those debriefings were previously covered by an 'off the record' agreement by the parties." Plea Agr. ¶ 15(d).

■ Shah advances another theory in relation to the government's alleged use of immunized information, that because ·the

government allegedly did not reveal the existence of the immunity agreement to the Court during the plea hearing, Shah should be permitted to withdraw his plea. Shah cites to *United States v. Roberts*, 570 F.2d 999 (D.C.Cir.1977) to support this theory. In *Roberts*, the government did not inform the trial judge of all promises that had been made by the parties pursuant to the plea agreement. The government had reserved the right to allocute at sentencing for a substantial sentence, but informed the court during the plea hearing only that it reserved the right to allocute. *Roberts*, 570 F.2d at 1005–06. The court noted that the term "allocution" on its own was subject to several different interpretations. The government apparently intended it to mean the right to· file a statement with the court before sentencing advocating a long sentence, while the defendant apparently understood it to mean that the government would orally bring to the court's attention that the defendant's guilty plea merited leniency. *Id.* at 1010. The court observed that the case presented "an instance of a possible failure in the meeting of the minds over the terms of the plea agreement." *Id.* at 1008. Given these circumstances, the court found that the defendant should be permitted to withdraw his plea. *Id.* at 1012.

*Roberts* does not support Shah's case. The grant of immunity was not part of the plea agreement The terms of the plea agreement were revealed to the Court when the written, signed agreement itself was presented to the Court and fiated into the record. Tr. at 2, 9–11. The plea agreement contains an integration clause stating that no other "agreements, promises, understandings or undertakings" between Shah and the government exist. Plea Agr. ¶ 29. Furthermore, the plea agreement itself discloses the existence and contents of the immunity grant under which Shah cooperated. Plea Agr. ¶¶ 24

("[T]he United States will not use against your client, directly or indirectly, in any criminal or in any civil proceeding, any of the information or materials provided to the United States by your client during the course of your client's cooperation pursuant to this agreement or during the course of any debriefing conducted in anticipation of this agreement."); *cf. also United States v. Alegria*, 192 F.3d 179, 186 (1st Cir.1999) ("[I]t is not reasonable for Alegria to seek the benefit of a prior oral representation by the government after he signed a fully integrated writing that did not contain the claimed representation, and expressly affirmed to the district court in the change-of-plea colloquy that he had not been influenced by extrinsic representations of any kind.").

### D. Prejudice to the Government

 The third and final *Barker/Cray* factor courts are to consider in determining whether to grant a plea withdrawal, after defendant has demonstrated a claim of innocence and a legally defective plea colloquy, is whether proceeding to trial would prejudice the government. The government in this case asserts that it would be prejudiced. If there is prejudice to the government, it raises the bar on the defendant's burden on the other two factors: "The movant's reasons must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially prejudiced the Government's ability to prosecute the case." *United States v. Barker*, 514 F.2d 208, 222 (D.C.Cir.1975). Prejudice may be shown in a variety of ways, such as "the difficulty the Government would encounter in reassembling far-flung witnesses in a complex case," "where a defendant's guilty plea removed him from an ongoing trial of co-defendants, who were then found guilty," and where "withdrawal would sub-

stantially inconvenience the court." *Id.* The length of delay between entry of plea and motion to withdraw has a bearing on this factor. *Id.*

■ All these factors support the government's assertion of prejudice. The original indictment in this case was filed in July 1998. Two trials have already been held. A key witness, Nuri Lama, has died. Another witness, a cooperator, has been deported as part of the sentence imposed by this Court. The government also informs the court that another important potential witness, a cooperator, has been diagnosed with brain cancer, which rendered the witness incompetent more than a year ago. Gov't's Omnibus Response [662] at 15. This is a complex, multinational and multi-state case. The prejudice to the government and the inconvenience to the Court in holding a *third* trial in this case weigh against permitting defendant to withdraw his plea.

### III. Objections to Pre–Sentence Report

Because defendant will not be granted leave to withdraw his plea, the Court will consider his objections to the PSR. Shah attacks the PSR on numerous grounds, arguing that its ultimate calculation of his Guidelines score is incorrect. The Court will address the areas of contention.

### A. Amount of Drugs

Shah argues that the government improperly inflated the amount of drugs

Shah participated in importing and distributing in its proffer, and this inflated amount was used to calculate the Guidelines sentence in the PSR. The government's proffer-and the PSR-state that Shah is responsible for more than 10 and less than 30 kilograms of heroin. Shah repeatedly states that the government has not proven this amount beyond a reasonable doubt, and thus including this amount in the Guidelines calculations violates *Apprendi*'s rule that any fact that increases the maximum sentence must be proven beyond a reasonable doubt.[5] *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

■ This assertion is puzzling. The essence of a guilty plea is an admission of wrongdoing, including its extent and degree. A defendant entering a guilty plea is informed that he is waiving the right to have the facts of his offense proven to a jury beyond a reasonable doubt. *See* Tr. at 3–4. This waiver encompasses sentencing factors. "[I]t is well established that [by pleading guilty] a defendant forfeits a host of constitutional rights, including his right to a jury ... and his right to have every element of his offense proven beyond a reasonable doubt ...." *United States v. Leachman,* 309 F.3d 377, 384 (6th Cir.2002) (citations omitted). This includes the amount of drugs on which a defendant is sentenced. *Id.* Where a defendant stipulates to the amount of drugs, *Apprendi* does not come into play. *United States v. Harper,* 246 F.3d 520, 530–31 (6th

---

**5.** Shah presents two alternate methods for calculating the amount of drugs on which he should be sentenced. The first is the amount of drugs Shah supplied during controlled buys. Second, Shah draws from the Court's previous trials to calculate the amount of drugs distributed by Nuri Lama, the "kingpin" of the drug organization, and subtracting the deals in which Shah was not a participant, which gives him a total of about 6 and a

half kilos. This calculation ignores the fact that Shah was not on trial. The evidence at the trials related not to Shah, but to the actual defendants on trial, and only transactions related to those defendants were presented to the jury. The evidence regarding Shah's specific conduct was not and will not be presented to a jury because he waived the right to seek such a presentation.

Cir.2001) (overr. on other grounds by *United States v. Leachman*, 309 F.3d 377 (6th Cir.2002)). Given this waiver, the government is not required to prove to a jury beyond a reasonable doubt the amount of drugs relevant to the Guidelines-there is no need to prove something to which a defendant has already admitted.

 Rule 11 requires that a District Court find a factual basis for to support a plea before accepting it. *United States v. Ford*, 993 F.2d 249, 253 (D.C.Cir. 1993). The insufficiency of a factual proffer may offer a basis for withdrawal of a guilty plea. However, in such a case the deficiency must be such that no evidence at all to support an element of the charge was offered. *United States v. Ahn*, 231 F.3d 26 (D.C.Cir.2000). Here, the government's proffer adequately supports more than 10 but less than 30 kilograms. The chart in the Appendix lists, from the proffer, the dates and amounts of the transactions in which Shah was involved directly or through the course of the conspiracy. Taking the lower number where a range is given as to both quantity and number of transactions, and excluding the distribution of a large but unspecified amount of heroin (¶ 4), the minimum total amount of drugs contained in the government proffer is 10.29 kilograms. *See United States v. Sklar*, 920 F.2d 107, 112 (1st Cir.1990) (court must err on the side of caution in estimating drug quantity). Further, the proffer states that it "is not intended to constitute a complete statement of all facts known by SHAH but is a summary of facts intended to provide a sufficient basis for the guilty plea." Plea Agr. ¶ 14. The proffer in this case is not deficient and adequately supports Shah's guilty plea.[6]

B. Upward Adjustment for Supervisory Role

 Guidelines § 3B1.1 permits an upward adjustment for defendants who play a significant role in an offense. Shah's PSR includes a two-level upward adjustment under § 3B1.1(c), on the grounds that Defendant was an "organizer, leader, manager, or supervisor in any criminal activity" involving less than five people. U.S.S.G. § 3B1.1. According to the application note, while this upward adjustment applies to organizers of people, those exercising management responsibility over the property, assets, or activities of a criminal organization may be subject to an upward departure, but not to the adjustment. *Id.* cmt. n. 2. This two-level adjustment is intended for those supervising "relatively confined criminal activity." *United States v. Graham*, 162 F.3d 1180, 1182 (D.C.Cir.1998). This upward adjustment must be supported by a preponderance of the evidence, but the evidence can be circumstantial. *Id.* It is not appropriate for all members of an organization who are merely not at the bottom rung of a conspiracy to receive an adjustment under § 3B1.1. *Id.* at 1184. The factors to be considered are a defendant's "exercise of decisionmaking authority, the nature of his participation in the commission of the offense, his recruitment of accomplices, any claimed right to a larger share of the fruits of the crime, the degree of his participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control or authority he exercised over others." *Id.* at 1185 (quoting *United States v. Thomas*, 114 F.3d 228, 261 (D.C.Cir.1997)).[7]

---

**6.** Shah again argues here that the drug quantity was improperly derived from immunized statements Shah gave during debriefing. The Court rejects these arguments for the same reasons described *supra*.

**7.** The *Graham* Court recognized that *Thomas* had adopted these factors from the Guide-

In representing to the Court that the government's proffer and plea agreement were factually correct, Shah admitted to being an organizer, leader, manager, or supervisor within the meaning of § 3B1.1(c). Plea Tr. at 11. The plea agreement states that "[y]our client agrees that the base offense level for the crimes to which your client is pleading guilty should be increased by two levels ... because of your client's supervisory role in the offenses to which he is pleading guilty." Plea Agr. ¶ 3.

█ It is unclear whether an admission to a Guidelines upward adjustment factor must be supported by an adequate factual basis, as a guilty plea must be. *United States v. Ford,* 993 F.2d 249, 253 (D.C.Cir. 1993) (Rule 11 requires adequate factual support for guilty plea). The Court will err on the side of caution and assume that it must be.[8] The plea agreement provides no details describing how Shah played a supervisory role in the drug enterprise. The proffer is not illuminating, either, explaining only that "SHAH assisted NURI LAMA ... in the importation and redistribution of large amounts of heroin." Gov't Proffer ¶ 2. The PSR notes Defendant's agreement to the two-level upward adjustment. PSR (rev'd) ¶ 4. It also states that Shah "made hotel arrangements for couriers, picked up money and redistributed heroin." *Id.* ¶¶ 25, 31. The government substantially repeats these facts in its briefing, and also notes that based on Defendant's admissions and statements to

a cooperating fellow-inmate regarding Raymond Cruz he was recruiting mules, meeting them upon arrival in this country, and assuming responsibility for the delivery of drugs. Gov't Response [665] at 8.

The factors relied on by the PSR do not relate to supervision of other people in the conspiracy, but only to supervision of things and activities, a permissible upward departure factor but not activities to support the upward adjustment under § 3B1.1. By contrast, however, the account of Shah's involvement with Raymond Cruz meets the *Thomas* factor of recruitment of accomplices. A rough account of conversations between Shah and the cooperating inmate indicates that Shah said "all Shah did was introduced [Cruz] into the guy that invested the money." Gov't Omnibus Response [662] app. D (April 26, 2000). While there is no caselaw exactly on point, there is precedent that introducing codefendants to a potential additional codefendant (in that case, a confidential informant) disqualifies a defendant from getting a downward adjustment for playing a minor role in an offense. *United States v. Carrasco,* 271 F.3d 765, 769 (8th Cir.2001). The evidence of recruitment and introduction, combined with defendant's admission in the plea agreement that he was a supervisor, manager, leader, or organizer adequately supports the two-level adjustment under § 3B1.1(c).

## C. Death of Raymond Cruz

█ Defendant also objects to the PSR's base offense level of 38, which is

line's application Note 4, and acknowledged that Note 4 was designed to aid in distinguishing between an "organizer or leader" and a "manager or supervisor," but nevertheless found the factors useful in applying all sections of § 3B1.1. *Graham,* 162 F.3d at 1185 n. 5.

**8.** This is excessively cautious. Rule 11, which prompted *Ford,* does not apply to the PSR. Nor does *Apprendi* apply here, because while

the upward adjustment results in an increase in Defendant's sentence, it does not affect the maximum sentence to which Defendant is subject, which is life under 21 U.S.C. § 960(b)(1)(H). *See Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (any fact that increases the maximum sentence must be proven beyond a reasonable doubt).

derived from the combination of the conspiracy to import, and conspiracy to possess and distribute 1 kilogram or more of heroin and that death or serious bodily injury occurred. PSR ¶ 28. The death enhancement comes from the death of Raymond Cruz, a drug mule who ingested packets of heroin in Kathmandu, Nepal to smuggle them into the United States. Several of the packets burst before Cruz could pass them out of his system, and he died as a result. The PSR initially stated that Shah had arranged for Cruz to meet the Nepalese supplier for the purpose of smuggling the heroin into the United States, but that is apparently not the case. PSR at 17. Rather, according to the rough transcripts of the conversations between Shah and the cooperating inmate, Shah found Cruz to act as a mule for another drug deal and received a referral fee of "like $2000" for this recruitment. Gov't Omnibus Response [662] app. D (April 26, 2000). The plea agreement states that Shah agrees that he is accountable for the death of Raymond Cruz. Plea Agr. ¶ 2(b). The proffer recounts Shah's accountability for Cruz's death, noting that Shah unsuccessfully attempted to help Cruz pass the heroin out of his system. Gov't Proffer ¶ 13. Finally, the government reiterated at the plea hearing that as a condition of the plea agreement Shah "would have to acknowledge the relevant conduct that is outlined in terms of the death of Raymond Cruz." Tr. at 10. Shah's acknowledgments, as well as the facts, indicate that the enhancement for death or serious bodily injury is warranted.

## IV. Downward Departures

In addition to attacking the calculation of the Guidelines factors in the PSR, Shah presents numerous bases on which he contends the Court should depart downward from the Guidelines. The Court addresses each of those bases in turn. Because the record of this case conclusively shows that Shah is entitled to no relief, a hearing on this matter is unnecessary. *United States v. Adamson*, 46 F.Supp.2d 1, 2–3 (D.D.C. 1999) (Harris, J.).

### A. Statutory and Guidelines Factors

#### 1. Downward Departure under § 5K1.1

■ In consideration for Shah's cooperation, the government agreed to inform the Departure Guideline Committee of the United States Attorney's Office for the District of Columbia of the extent of Shah's cooperation and file a departure motion if permitted by that committee. Plea Agr. ¶¶ 18–19. The government also agreed to bring Shah's cooperation to the attention of the Court. Plea Agr. ¶ 17. However, the plea agreement required Shah to cooperate "truthfully completely and forthrightly" with the government, and "not to commit any criminal violation of local, state or federal law during the period" of his cooperation. Plea Agr. ¶ 6(a),(e). Under the terms of the plea agreement, the government must prove the violation of the law only by a preponderance of the evidence. Plea Agr. ¶ 6(e). The plea agreement provides that Shah's breach of any of the conditions relieves the government of its obligations. Plea Agr. ¶ 15.

The government contends that Shah breached both the above listed conditions of the plea. These breaches were revealed through Shah's conversations with a cooperating inmate; several of the conversations were taped and roughly transcribed, and the transcriptions were attached to the Government's Omnibus Response [662]. First, during debriefing, Shah denied knowledge of or an ability to deal with a supplier in Nepal, Karma Lama. Gov't

Omnibus Response at 2, 9. However, when working to arrange a drug deal between his contacts on the outside and the cooperating inmate's contacts on the outside, Shah contacted Karma to be an instrumental part of the deal. Gov't Omnibus Response app. D. From this the government concludes that Shah did not reveal the full extent of his knowledge, in breach of the agreement. Second, the rough transcripts show that Shah was attempting to arrange a deal for heroin distribution between his non-incarcerated contact, Karma Lama, and the cooperating inmate's non-incarcerated contact, Mike. These transcripts prove by a preponderance of the evidence that Shah breached his agreement by violating the law.

 Shah asserts that the Court should inquire into whether the government failed to file a § 5K1.1. motion on improper grounds. Downward departure for substantial assistance must be initiated by motion of the government, *United States v. Alegria,* 192 F.3d 179, 189 (1st Cir.1999), except in the very limited circumstance in which the defendant shows that the government's refusal to make a motion " 'was based on an unconstitutional motive, that the refusal was irrational, or that the motion was withheld in bad faith.' " *United States v. Rounsavall,* 128 F.3d 665, 668 (8th Cir.1997). The burden is on the defendant to prove the foregoing. The government need only meet a burden of production to show that it performed a plea agreement in good faith, and "[a]s long as the government satisfies this modest burden, the trial court need go no

further unless the defendant makes a substantial threshold showing that the government acted in bad faith." *Alegria,* 192 F.3d at 187; *see also Rounsavall,* 128 F.3d at 668 (echoing the "substantial threshold showing" requirement).[9] Here, the government has met its burden of production (and proven by a preponderance) that Shah breached his plea agreement. Shah has made no substantial threshold showing of bad faith on the part of the government,[10] and therefore the court will inquire no further and will not hold a hearing on the issue. *Alegria,* 192 F.3d at 188 ("[I]n criminal cases, evidentiary hearings should be the exceptions, not the rule."). Shah will not receive a departure under § 5K1.1.

### 2. Minor Participant

 Shah argues that he is entitled to a two-point downward adjustment under § 3B1.2(b), for being a minor participant in any criminal activity. This includes, for example, "defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." U.S.S.G. § 3B1.2 cmt. n. 4 (describing role of "minimal participant" under § 3B1.2(a)). Given that the Court has already determined that the PSR correctly applies a two-point upward adjustment based on Shah's role as a manager, leader, or supervisor, Shah is not eligible for this adjustment. Shah was aware of the scope of Nuri Lama's narcotics empire, and participated in the importation and/or distribution of over 10 kilograms of heroin. He recruited mules, and organized administrative aspects of the scheme such as booking hotel rooms. These activities indicate

---

**9.** Once a substantial threshold showing is made the burden remains on the defendant to prove, by a preponderance of the evidence, that the government breached the agreement. *United States v. Conner,* 930 F.2d 1073, 1076 (4th Cir.1991). In this case, as in *Conner,* the defendant would at least have "to demon-

strate that he provided the degree of assistance contemplated by the agreement." *Id.*

**10.** The Court has already discussed the only specific type of bad faith alleged by defendant, that the government used immunized information to file its superseding information.

more than minor participation in the scheme.

### 3. Safety Valve of 18 U.S.C. § 3553(f)

■ Under 18 U.S.C. § 3553(f), the court may impose a sentence less than the mandatory minimum under certain circumstances.[11] Five conditions must be met: the defendant does not have more than one criminal history point; the defendant did not use violence or possess a dangerous weapon in connection with the offense; the offense did not result in death or serious bodily injury; the defendant was not an organizer, leader, manager, or supervisor of others; and "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has." 18 U.S.C. § 3553(f). Shah fails on three of these conditions, as discussed elsewhere in this opinion. First, the offense resulted in the death of Raymond Cruz. Second, Shah was an organizer, leader, manager, or supervisor. And third, Shah did not truthfully provide to the government all information and evidence that he knows. The safety valve provision in this section is intended to protect drug mules. *United States v. Sanchez–Restrepo*, 57 F.3d 1078, 1995 WL 338815 at *5 n. 2 (9th Cir.1995). Shah was not a mere mule, but was an important part of Nuri Lama's narcotics scheme.

### B. Non–Guidelines Factors

■ Guidelines § 5K2.0 permit a court to depart from the Guidelines calculation where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should re-

sult in a sentence different from that described." U.S.S.G. § 5K2.0. It is intended to be applied to unusual cases outside the "heartland" of what the Guidelines contemplated would comprise a typical defendant and offense. Departures under this section are expected to be "highly infrequent." *Koon v. United States*, 518 U.S. 81, 96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the Supreme Court set up a framework for determining whether departure on a non-Guidelines factor is appropriate. First, a court must determine whether the Commission has proscribed consideration of the factor, *Koon*, 518 U.S. at 109, 116 S.Ct. 2035:

> Section 5H1.10 (Race, Sex, National Origin, Creed, Religion, and Socio–Economic Status), § 5H1.12 (Lack of Guidance as a Youth and Similar Circumstances), the third sentence of § 5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse), the last sentence of § 5K2.12 (Coercion and Duress), and § 5K2.19 (PostSentencing Rehabilitative Efforts) list several factors that the court cannot take into account as grounds for departure. With those specific exceptions, however, the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.

U.S.S.G. § 1A(b). Shah has not argued for departure on any of the proscribed grounds. Second, if a factor is not proscribed, the court "must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." *Id.*

---

11. For Shah, who plead guilty to conspiracy to import, and conspiracy to possess and distribute one kilogram or more of heroin and conceded that death resulted, the mandatory minimum is 20 years. 21 U.S.C. § 960(b)(1)(H).

### 1. Disparate Sentences for Co–Defendants

■■■ Shah points to the more lenient sentence received by a cooperating codefendant in this case to argue that his sentence is too large. This argument is inapposite because the two defendants are not similarly situated. The codefendant entered into a plea agreement similar to that entered by Shah, but, unlike Shah, the codefendant fully and satisfactorily performed his plea agreement, and the government filed a motion under 5K1.1, which the Court granted. Regardless, " '[d]isparity between sentences imposed on codefendants is not a proper basis for departure.' " *United States v. Carrasco*, 271 F.3d 765, 768 (8th Cir.2001). Furthermore, this argument ignores sizeable sentences imposed on other co-defendants in this fourteen defendant case, including life sentences.

### 2. Alien Status

■■■ Shah argues that because as an alien he is subject to collateral consequences as a result of his conviction, his sentence should be mitigated to make up for it. The Eighth Circuit has concluded that "[a]s a factor unmentioned in the guidelines, alien status and the collateral consequences flowing therefrom may be an appropriate basis for departure." *United States v. Lopez–Salas*, 266 F.3d 842, 847 (8th Cir.2001). However, it continued, "[t]he court must still articulate why that factor is sufficiently atypical to justify a departure." *Id.* Shah has pointed to nothing that distinguishes him from any other alien facing a felony conviction. Rather, he will be subject to the same legislation that will result in the deportation of any alien in his situation. Therefore, the Court denies a departure on this ground.

### 3. Conditions of Confinement

■■■ Like alienage, downward departure based on the length or severity of presentence confinement would be permissible in the proper case. *United States v. Sutton*, 973 F.Supp. 488, 493 (D.N.J.1997). However, as with alienage, a defendant's experience must be atypical, *Sutton*, 973 F.Supp. at 492, or unusual, *United States v. Brinton*, 139 F.3d 718, (9th Cir.1998), *rev'd on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir.2000). To prove this atypicality, one court has suggested that "a defendant must demonstrate to the court that the conditions compare unfavorably to those suffered by other inmates" at the same facility. *United States v. Pacheco*, 67 F.Supp.2d 495, 498 (E.D.Pa.1999). As support for his contention that his presentence conditions of confinement are onerous, Shah attaches a newspaper article describing various deficiencies at the D.C. Jail. Defendant's Reply [667] exh. 10 (Serge F. Kovaleski, *D.C.'s Inmate Cap Likely to Be Lifted*, WASHINGTON POST, June 25, 2002). While the conditions described are undeniably unpalatable, Shah fails to establish that these conditions are outside the norm for prison confinement.[12] In fact, the D.C. Circuit has squarely held that an extended stay at the D.C. Jail does not prejudice a defendant: "[L]ittle weight need be given to Yelverton's complaint about his extended stay at the D.C. Jail while he awaited sentencing in the absence of any evidence that he was a victim of untoward or unusual suffering as a result. To the contrary, it is well established that a prisoner

---

12. This Court is not hesitant to inquire into conditions at the D.C. Jail and seek a remedy where necessary. *See, e.g., United States v. Gray*, Cr. No. 00–157, Order of January 17, 2003 [1215]. If Shah has specific concerns he would like the Court to address he need only bring them to the Court's attention.

does not have a right to be housed in a particular institution." *United States v. Yelverton*, 197 F.3d 531, 538 n. 9 (D.C.Cir. 1999).

### 4. Delay in Sentencing

 It is not clear that there is a right to speedy sentencing, but the D.C. Circuit indicated that the Supreme Court assumed that was the case in *Pollard v. United States*, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), as cited by *United States v. Yelverton*, 197 F.3d 531, 535 (D.C.Cir.1999). A delay in sentencing must not be purposeful or oppressive. *Id.* In the plea agreement, Shah waived the right to a speedy sentence, because sentencing was to be delayed until his cooperation was complete. Plea Agr. ¶ 9. Even if he had not done so, the delay in sentencing would not constitute reason to depart downward because the period of his detention has been shorter than even the bare-bones 70–84 months Shah suggests as an appropriate sentence, much less the 292–365 months he faces under the Guidelines. Shah was arrested July 29, 1998, and has been in custody since then, approximately four and a half years. Shah will receive credit against his sentence for the time served while awaiting sentencing. There is no prejudice to a defendant, and hence no need for an extraordinary remedy such as departure from the Guidelines, where the ultimate sentence is "far in excess of the delay in sentencing." *Yelverton*, 197 F.3d at 538–39.

### 5. Improper Prosecutorial Enlargement of Crime

Taking another tack in disputing the quantity of heroin for which he is responsible, Shah argues that the prosecution is responsible for inflating the amount of heroin for which he will he held liable under the Guidelines, and argues that the Court can exclude some unspecified amount of the heroin from the sentencing calculation, citing *United States v. Egemonye*, 62 F.3d 425 (1st Cir.1995). In *Egemonye*, the court held that where law enforcement officers improperly enlarge size of an undercover transaction, the court may exclude "the tainted transaction" from the Guidelines calculation. *Egemonye*, 62 F.3d at 427 (citation omitted). *Egemonye* does not apply here. While Shah engaged in some transactions with undercover officers and cooperators, those transactions totaled 335 grams of heroin, a tiny percentage of the total amount of heroin to which Shah admitted distributing. But it is not these transactions of which Shah complains; rather Shah is attempting here to reargue the drug quantity issue, asserting that he was merely boasting to D.C. law enforcement and prosecution about the amount of heroin he was involved with, and that the prosecution was overreaching by taking him at his word in setting the total at more than 10 but less than 30 kilograms. The Court has already considered and rejected this argument, and repeats that the government's factual proffer-which was based on Shah's own admissions to law enforcement-accurately supports the Guidelines drug quantity.

### 6. Facilitation of Justice

 Shah argues that his guilty plea and cooperation helped convince Nuri Lama, the head of the narcotics organization, to plead guilty and cooperate as well. For this he argues that he deserves a downward departure for the facilitation of justice. The facilitation of justice is a factor taken into account by the Guidelines. Where a factor is already considered by the Guidelines, "the court may depart only if the feature is present to an exceptional degree or the case is distinc-

tive in some other way." *United States v. Dethlefs*, 123 F.3d 39, 44 (1st Cir.1997).

Section 3E1.1 permits a downward adjustment of two levels for acceptance of responsibility, and an additional one level for qualifying defendants who timely provide complete information to the government regarding their involvement in the offense or timely notifying authorities of the intention to enter a plea of guilt and thereby saving the government the time and resources that would be spent preparing for trial. U.S.S.G. § 3E1.1. The plea agreement contemplated that Shah would receive the full three-point adjustment for acceptance of responsibility. Plea Agr. ¶ 3. However, the PSR determined that because Shah had continued his efforts in the narcotics trade while in jail, he had not accepted responsibility for his actions and therefore was given no departure. The application note to § 3E1.1 lists several factors to consider in deciding whether it is appropriate to award the acceptance of responsibility reduction, including "voluntary termination or withdrawal from criminal conduct or associations." U.S.S.G. § 3E1.1, cmt n. 1(b). It further notes that entry of a guilty plea is "significant evidence of acceptance of responsibility," but the evidence may be outweighed by conduct inconsistent with the acceptance of responsibility. *Id.* § 3E1.1, cmt. n. 3. The note emphasizes that "[a] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." *Id.* Here, the evidence shows that Shah did not terminate his criminal conduct nor withdraw from his criminal associations, based on his interactions with the cooperating inmate, and thus did not accept responsibility within the meaning of § 3E1.1.

Because the Guidelines do not forbid consideration of facilitation of justice as a departure factor, a defendant's timely plea "and his actions ancillary thereto may have ameliorative consequences so far beyond ordinary expectations as to warrant a downward departure for conserving judicial resources and thereby facilitating the administration of justice." *Dethlefs*, 123 F.3d at 46. However, "when a sentencing court mulls a ground already considered by the Commission, there must be something very special about how that ground manifests itself in the particular case if it is to bear the weight of a departure." *Id.* at 47. This case presents what may be a fairly uncommon situation in which the defendant's plea may have encouraged Nuri Lama, a leader of the drug distribution organization, to plead guilty, but defendant failed to meet the terms § 3E1.1 sets out for a downward departure. However, the Court is not persuaded that this case is so unusual that it falls outside the heartland of the Guidelines. Although the Court appreciates Shah's efforts, it is not uncommon in a multiple defendant situation for one defendant's plea to encourage others to plead also, and this case is not so outside that norm as to warrant a departure.

## V. Conclusion

The defendant here seeks any possible means by which he may reduce the sentence he is facing, a sentence based on his own admission of participation in a conspiracy to import and conspiracy to possess and distribute over 10 kilograms of heroin. Like the defendant in *United States v. Stewart*, 198 F.3d 984 (7th Cir. 1999), he has decided that the price of crime is too high. *Stewart*, 198 F.3d at 985. Be that as it may, defendant has advanced no reason why he should not pay that price. He has not proven an entitlement to withdraw his plea—he advanced no claim of innocence, showed no error in the Rule 11 plea colloquy, and did not

show that the government would not suffer prejudice from trying this case four years out. His objections to the presentence report are unwarranted. The proffer was based in large part on information proffered by the government at the plea colloquy, and defendant confirmed that it represented the true state of facts and affirmatively answered the Court's question, "You really are guilty of this offense?" Tr. at 12. Accordingly, Defendant's motion for leave to withdraw guilty plea [639], omnibus sentencing motion [654], and objections to the presentence report [655] are denied.

A separate order shall issue this date.

## APPENDIX

Drug Amounts in the Government's Proffer

| Paragraph | Date | Amount | Calculation Amount |
|---|---|---|---|
| 3 | Sept.1994 | 270–280 grams | 0.270 kilos |
| 4 | Fall 1995 | "large amount" | 0 |
| 4 | 1996 (4–5 transactions) | 2–4 kilograms | 2 kilos |
| 5 | Spring 1996 | 500 grams | 0.5 kilos |
| 5 | Summer 1996 | 500–1500 grams × 4–5 times | 2 kilos (500 × 4) |
| 6 | Winter 1996–97 | 1 kilogram | 1 kilo |
| 7 | Early March 1998 | 1400 grams | 1.4 kilos |
| 8 | Early March 1998 | 350 grams | 0.35 kilos |
| 9 | Mid March 1998 (Lama only) | 1 kilo + 135–200 grams | 1.135 kilos |
| 10 | Early April 1998 | 135 grams | 0.135 kilos |
| 11 | July 3, 1998 | 1.5 kilos | 1.5 kilos |
| | | | Minimum Total: 10.29 kilos |

## ORDER

This case comes before the Court on Defendant Shah's memorandum in aid of sentencing [638], Defendant's objections to the presentence report [655], and the government's response [665]; Defendant's omnibus motion for sentencing under 18 U.S.C. § 3355(f) [654]; and Defendant's motion for leave to withdraw guilty plea [639], the government's omnibus response [662], and Defendant's reply [667].

For the reasons set forth in an accompanying memorandum opinion, it is hereby ORDERED that Defendant's omnibus motion [654] is DENIED.

It is further ordered that Defendant's motion for leave to withdraw guilty plea [639] is DENIED.

Defendant's objections to the presentence report [665] are DENIED.

SO ORDERED.