# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 7, 2006          Decided July 11, 2006

No. 03-3070

UNITED STATES OF AMERICA,
APPELLEE

v.

SHASHI SHAH,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 98cr00235-02)

———

*Sandra G. Roland*, Assistant Federal Public Defender,
argued the cause for appellant. With her on the briefs was *A. J.
Kramer*, Federal Public Defender.

*Suzanne C. Nyland*, Assistant U.S. Attorney, argued the
cause for appellee. With her on the brief were *Kenneth L.
Wainstein*, U.S. Attorney, and *Roy W. McLeese, III*, *Elizabeth
Trosman*, and *William J. O'Malley, Jr.*, Assistant U.S.
Attorneys.

Before: RANDOLPH and GRIFFITH, *Circuit Judges*, and
EDWARDS, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: On October 16, 1998, Shashi Shah pled guilty to an information charging him with conspiring to import heroin into the District of Columbia, Maryland, and New York from Nepal and Thailand between 1994 and August 1998, and with conspiring to possess with intent to distribute, and conspiring to distribute, heroin during the same period of time and in the same places. On the day of his plea, Shah and his attorney signed a ten-page plea agreement, among the terms of which was Shah's pledge to be a cooperating witness. Shah's sentencing was therefore postponed. In June 2002 Shah filed a motion to withdraw his plea. The district court denied the motion and sentenced him to 292 months of imprisonment. *United States v. Shah*, 263 F. Supp. 2d 10 (D.D.C. 2003). The issues on appeal deal with the denial of the motion and with sentencing.

Under Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure, a district court may grant a presentence motion to withdraw a guilty plea if "the defendant can show a fair and just reason." Although motions to withdraw a guilty plea before sentencing are often granted, relief is not a matter of right. *United States v. Loughery*, 908 F.2d 1014, 1017 (D.C. Cir. 1990). The district court's rejection of a withdrawal motion is reviewed for abuse of discretion. *United States v. Cray*, 47 F.3d 1203, 1206 (D.C. Cir. 1995); *United States v. Ford*, 993 F.2d 249, 251 (D.C. Cir. 1993). Reversal is "uncommon." *Loughery*, 908 F.2d at 1017.

Over the years we have developed tests for determining when a district court abuses its discretion in rejecting a motion like Shah's: the defendant must show "an error in the taking of his plea or some 'more substantial' reason he failed to press his case rather than plead guilty"; he must "make out a legally

cognizable defense to" the charges; and even if he meets those requirements, there is still the question "whether the Government would have been substantially prejudiced by the delay in going to trial." *Cray*, 47 F.3d at 1207.

Shah does not argue that in taking his plea, the district court committed any error. The 1998 proceedings fully complied with Rule 11 of the Federal Rules of Criminal Procedure. After Shah was put under oath, the district court told him that "your answers to my questions are subject to the penalty of perjury or making a false statement"; asked if he understood this, Shah answered "Yes, sir." The court then conducted a meticulous examination, eliciting Shah's agreement and understanding that by pleading guilty he was waiving his right to trial and his Fifth Amendment privilege against self-incrimination. Shah signified that he fully understood the charges against him and the potential sentence he faced. He acknowledged his signature on the plea agreement and he swore that the evidence set forth in the government's proffer – which Shah also signed – was true. Included in that evidence were details about Shah's smuggling and distribution of heroin, including descriptions of transactions, participants, dates, and amounts. As set forth in the plea agreement, the total amount of heroin for which Shah was responsible was between 10 and 29 kilograms. Shah also acknowledged that he played a supervisory role in the conspiracy. The plea agreement and the government's proffer described Shah's involvement in the death of Raymond Cruz, a drug courier who smuggled heroin from Nepal by ingesting it and died in Shah's presence in New York City in May 1997.

In an affidavit accompanying his motion to withdraw his plea, Shah set forth no facts relating to these transactions or his role in them and he never mentioned Cruz's death. Instead, his affidavit – apparently prepared with the assistance of counsel –

merely asserted that the plea agreement "improperly inflated and enhanced my role" in the conspiracy and that "[t]here was little or no factual basis in the government's proffer." A somewhat more comprehensive set of objections to the presentence report, filed by Shah's new attorney, admitted Shah's responsibility for about 6 kilograms of heroin, denied his responsibility for Cruz's death, and denied that Shah had a supervisory role in the conspiracy. The government filed a lengthy response. Included as an exhibit were summaries of Shah's tape recorded conversations while he was imprisoned awaiting sentencing. Shah then stated that he recruited Cruz to act as a "mule" to import heroin into the United States.

Shah contends that his plea was "tainted" because his attorney was ineffective. His argument is that his plea agreement and the government's proffer inflated the amount of heroin for which he was accountable, exaggerated his role in the conspiracy, and wrongly assigned responsibility to him for Cruz's death, all of which increased his Sentencing Guidelines range; and that his attorney nevertheless advised him to plead guilty in view of the government's promise to file, in return for his cooperation, a letter urging the court to depart downward. The government never supplied a departure letter because Shah violated the plea agreement: while in prison awaiting sentencing, he sought to arrange a narcotics transaction. Shah's affidavit stated that he delayed filing a motion to withdraw his plea until he discovered that a departure letter would not be forthcoming. In connection with Shah's motion, his attorney at the time of his guilty plea stated in an affidavit that "several facts" in the plea agreement "inflated Shah's knowledge and participation" in the conspiracy. The attorney did not specify which particular "facts" these were.

Shah's argument – if not his affidavit – amounts to a claim that the defect in the taking of his plea consisted of his

5

committing perjury when, under oath, he acknowledged the truth of the factual recitals in the plea agreement and in the government's proffer. Lying to a court is not a "fair and just reason," FED. R. CRIM. P. 11(d)(2)(B), for allowing a plea to be withdrawn. *See United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005); *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999). A "motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *Peterson*, 414 F.3d at 827. Shah offers no such explanation. The most one can glean from his affidavit, and from his former attorney's, is that he lied because he expected to benefit from a government departure letter. But that is no explanation at all. Guilty pleas, pursuant to an agreement, usually confer some benefit on defendants as compared to their going to trial. It does not follow that defendants therefore have a compelling reason to commit perjury in the plea proceedings. The district court acted within its discretion in denying Shah's motion for these reasons, *see Shah*, 263 F. Supp. 2d at 24.[*]

As to his sentence, Shah claims that a preponderance of the evidence did not support the district court's enhancement of his offense level pursuant to § 3B1.1(c) of the Guidelines, which provides: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b) [above], increase [his base offense level] by 2 levels." According to the application notes, "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." UNITED STATES SENTENCING GUIDELINES MANUAL § 3B1.1 cmt. n.2. A "participant" is "a person who is

---

[*] For the same reasons, we have no difficulty finding that the district court acted within its discretion in denying Shah's motion for an evidentiary hearing.

criminally responsible for the commission of the offense, but need not have been convicted." *Id.* § 3B1.1 cmt. n.1. Citing *United States v. Graham*, 162 F.3d 1180, 1183 (D.C. Cir. 1998), the district court reasoned that § 3B1.1(c) was "intended for those supervising 'relatively confined criminal activity.'" *Shah*, 263 F. Supp. 2d at 30. Factors to be considered in determining whether a defendant qualifies for the adjustment include whether there is evidence that he recruited accomplices. *Graham*, 162 F.3d at 1185 (quoting *United States v. Thomas*, 114 F.3d 228, 261 (D.C. Cir. 1997)).

As mentioned earlier, the government submitted accounts of conversations between Shah and a jailhouse informant during which Shah said that he had been paid a commission of $2,000 for recruiting Raymond Cruz to act as a mule to import heroin into the United States. The district court concluded that Shah had introduced Cruz to a drug importer named Victor Valles, that Valles had provided Cruz with heroin to smuggle into the United States, and that Cruz had ingested the heroin before boarding a plane in Nepal bound for New York City, where Shah met him and unsuccessfully tried to assist him in passing the heroin. The district court found that this "evidence of recruitment and introduction," combined with Shah's admission in the plea agreement that he had been a supervisor, manager, leader, or organizer, supported the application of U.S.S.G. § 3B1.1(c)'s two-level enhancement. *Shah*, 263 F. Supp. 2d at 31.

Shah contends that "recruitment alone is insufficient" to support application of § 3B1.1(c), but the record demonstrates that Shah did considerably more. Shah told the informant that not only had he recruited others to "mule," but also that he "had people swallow [heroin] before, th[at] Victor [Valles] has gone 3 or 4 times for him." Thus, even if we assume *arguendo* that Shah's involvement with Cruz alone was insufficient to trigger

§ 3B1.1(c), the district court's finding was not clearly erroneous, which is the standard of review. *United States v. Stover*, 329 F.3d 859, 871 (D.C. Cir. 2003).

Shah also claims that insufficient evidence supported the district court's finding that Valles or Cruz were participants in the same drug conspiracy to which he pled guilty. Because he failed to raise this point in the district court, it is subject to review under the plain-error standard. As in the related context of *United States v. Mellen*, 393 F.3d 175, 184 (D.C. Cir. 2004), it was incumbent upon the district court to find that any supervisory role Shah played with respect to Cruz was within the scope of a conspiracy charged in the information. Shah pled guilty to conspiring to import heroin into New York from Nepal and Thailand, and to conspiring to possess it with intent to distribute it, between 1994 and August 1998. Cruz died on May 5, 1997, after ingesting heroin while smuggling it from Nepal to New York. Shah tried unsuccessfully to get him to pass the heroin in New York. On this record, it was not plainly erroneous for the district court to infer that Cruz died "muling" heroin as part of the same drug conspiracy to which Shah pled guilty.

The final issue, again not raised below, relates to § 2D1.1(a)(2) of the Guidelines. This sets a defendant's base offense level at 38 "if the defendant is convicted under 21 U.S.C. §§ 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. §§ 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance." As above, Shah contends that Cruz's death was not related to the conspiracy to which he pled guilty and that he did not plead guilty to any offense that was within the language just quoted. We have already rejected his first contention. The second founders on the fact that Shah pled guilty to violating 21 U.S.C. § 960(b)(1)(A), which

contemplates "death or serious bodily injury from the use of" heroin. It is true that the prosecutor and the district court stated, as did the presentence report, that Shah faced a mandatory minimum of 10 years in prison, whereas § 960(b)(1)(A) provides a minimum of 20 years if death or serious bodily injury results. But it is also true that the prosecution and the defense understood that Shah was accountable for the death as part of his offense. The plea agreement said precisely that as did the government's proffer. We cannot find plain error in the court's application of § 2D1.1(a)(2).

Shah seeks a limited remand under *United States v. Coles*, 403 F.3d 764 (D.C. Cir. 2005), to determine whether the district court would impose a lesser sentence under an advisory Guidelines regime. The government does not object and the district court's sentence at the low end of the Guidelines range supports Shah's position.

Accordingly we will remand the record pursuant to *Coles*. In all other respects the judgment of the district court is affirmed.

*So ordered.*