UNITED STATES of America,

v.

Zomara WILSON, Defendant.

No. 09 Cr. 1086 (GWG).

United States District Court,
S.D. New York.

Dec. 1, 2011.

Rachel P. Kovner, James J. Pastore, Jr., United States Attorney's Office, New York, NY, for United States of America.

Rehan Nazrali, Ronald Paul Hart, Law Offices, New York, NY, for Defendant.

## OPINION & ORDER

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

Zomara Wilson has moved to withdraw her guilty plea pursuant to Rule 11(d) of the Federal Rules of Criminal Procedure. For the following reasons, Wilson's motion is denied.

### I. BACKGROUND

#### A. The Charge in the Complaint

Wilson was charged in a criminal complaint dated August 13, 2009, with one count of fraud in connection with federal student assistance programs under 20 U.S.C. § 1097(a). *See* Sealed Complaint (annexed as Ex. A to Attorney Affirmation in Support of Defendant's Motion to Withdraw Guilty Plea, filed Sept. 16, 2011 (Docket #43) ("Att'y Affirm.")) ("Compl."). The complaint charged that from September 15, 2005 to January 27,

2009, Wilson worked as an admissions representative at the Anthem Institute in Manhattan. Compl. ¶ 9(a). Anthem Institute is a school that offers certificate programs in multiple fields. *Id.* ¶ 5. Students at Anthem are eligible to receive federal financial aid, such as Pell Grants, Supplemental Educational Opportunity Grants, Perkins Loans, and Federal Loans. *Id.* ¶¶ 2, 6. In order to receive federal financial aid, a student must have a high school diploma, possess a GED, or pass a designated Ability to Benefit ("ATB") exam. *Id.* ¶ 3.

In March 2009, Anthem Institute learned that seven students assigned to Wilson had fraudulent GED certificates in their files. *Id.* ¶ 8. When questioned about these certificates, Wilson told the Campus President that she had "changed one of them" but then declined to respond to additional questions about the other certificates. *Id.* ¶ 8(b).

Anthony Mangarella, a Special Agent with the United States Department of Education, Office of the Inspector General, spoke with several of the students whose records were at issue, none of whom was identified by name in the complaint. One student said that Wilson assured the student that the student had passed the ATB exam even though she had failed it. *Id.* ¶ 10(b), (c). Wilson later showed the same student a GED certificate and instructed the student to say her uncle had faxed it to the school. *Id.* ¶ 10(d). Another student said that Wilson allowed her to enroll prior to receiving the results of her GED exam. *Id.* ¶ 11. A third student said that Wilson had aided the student in filling out the Free Application for Federal Student Aid ("FAFSA") form. *Id.* ¶ 12(b). Wilson instructed this student to indicate that the student had a GED certificate even though Wilson knew the student had failed the GED exam several years previously. *Id.* ¶ 12(a), (b). Another student said that Wilson told her she did not need to take an exam even though she did not have a high school diploma or a GED. *Id.* ¶ 13(a), (b). Wilson told this student that she would indicate that the student possessed a GED certificate. *Id.* ¶ 13(d).

## B. *Indictment and Plea*

On November 9, 2009, a Grand Jury in the Southern District of New York returned a one-count indictment charging Wilson with fraudulently obtaining student assistant funds, 20 U.S.C. § 1097(a), and aiding and abetting that violation under 18 U.S.C. § 2. *See* Indictment, filed Nov. 9, 2009 (Docket # 10). On May 3, 2011, Wilson pled guilty to the Indictment pursuant to a plea agreement. *See* Transcript of Hearing Before Hon. Gabriel W. Gorenstein, dated May 3, 2011 (annexed as Ex. B to Att'y Affirm.) ("May 3, 2011 Plea"); Plea Agreement, dated Apr. 28, 2011 (annexed as Ex. A to Government's Memorandum of Law in Opposition to the Defendant's Motion to Withdraw her Guilty Plea, filed Oct. 2, 2011 (Docket # 44) ("Gov't Mem.")) ("Plea Agr."). In accordance with her plea agreement, Wilson's plea allocution specified that the amount of federal financial aid was less than $200, which made the crime a misdemeanor. *See* May 3, 2011 Plea at 6; Plea Agr. at 1.[1]

During the plea allocution, Wilson was placed under oath and gave the following statement as to what she did:

> On or about January 2009, I was employed as an admissions representative at Anthem Institute of Manhattan. An-

---

1. At the same time, Wilson consented to proceed before a Magistrate Judge for all purposes with respect to her misdemeanor plea.

*See* Consent to Proceed before a Magistrate Judge on a Misdemeanor Case, filed May 3, 2011 (Docket # 31).

them is a for-profit vocational technical school. On or about January 2009, as part of my employment, I met with a prospective student by the name of Chanel Young, whom I screened for admission into Anthem. As part of my responsibilities I made an appointment for her to meet with financial aid, for the purpose of her applying for financial aid and advised her that she would need to bring with her a GED certificate. I was aware that the GED certificate in her file was not authentic, since the date of the certificate was the date she was still in high school. By passing through her file through the financial office, I aided and abetted Ms. Young['s] attempt to receive financial aid, which she was not entitled to receive without a valid GED certificate.

May 3, 2011 Plea at 3, 12–13. The Court noted that Wilson was reading from a statement and asked her: "Does that statement accurately state what happened?" Wilson replied, "Yes. Yes, your Honor." The Court then asked, "Did it happen just the way you stated it there?" Wilson replied, "Yes, your Honor." *Id.* at 13. During the allocution, Wilson affirmed that she understood that she could not withdraw her plea and the next step in the case would be the sentencing. *Id.* at 8. The Court accepted the plea and sentencing was scheduled for August 3, 2011. *Id.* at 14.

### C. *The Motion to Withdraw the Plea*

On July 12, 2011, more than two months after she had pled guilty, Wilson sent the Court a letter requesting new counsel and informing the Court that she wished to withdraw her guilty plea in light of new information she had learned. *See* Letter from Zomara Wilson to Hon. Deborah A. Batts and Hon. Gabriel W. Gorenstein, dated July 12, 2011 (annexed as Ex. H to Att'y Affirm.) ("Wilson Letter"). In her letter, Wilson asserted that her attorney at the time of her plea, Donna Newman, had withheld material information and that had Wilson known this information, she would have not pled guilty. *Id.* At a hearing held on July 21, 2011, the Court granted Wilson's request to relieve Newman and the Court substituted Laura Birger as counsel. *See* Order, filed July 21, 2011 (Docket # 34).

Shortly thereafter, Birger sent a letter to the Court stating that she was not in a position to file the motion to withdraw Wilson's guilty plea. Accordingly, the Court held a conference on August 12, 2011, to determine whether Wilson should be appointed new counsel or should instead be allowed to proceed pro se. *See* Order, filed Aug. 10, 2011 (Docket # 33). At the end of the conference, the Court gave leave to Wilson to make her motion to withdraw pro se.

On August 23, 2011, however, Rehan Nazrali, Esq. filed a notice of appearance on behalf of Wilson. Notice of Appearance, filed Aug. 23, 2011 (Docket # 39). Shortly thereafter, Wilson, represented by Nazrali, filed her motion to withdraw her guilty plea. *See* Notice of Motion, filed Sept. 16, 2011 (Docket # 42); Att'y Affirm. The Government filed a memorandum in opposition, *see* Gov't Mem., and Wilson filed a memorandum in reply, see Defendant's Memorandum of Law in Reply to Government's Opposition to Defendant's Motion to Withdraw Her Guilty Plea, filed Oct. 17, 2011 (Docket # 47) ("Def. Reply").

## II. *DISCUSSION*

### A. *Applicable Law*

Rule 11 of the Federal Rules of Criminal Procedure allows a criminal defendant to withdraw a plea of guilty before sentencing if "the defendant can show a fair and just reason for requesting the

withdrawal." Fed.R.Crim.P. 11(d)(2)(B). Although a defendant can withdraw a plea for "any fair and just reason, it is basic that a defendant has no absolute right to withdraw his plea of guilty." *United States v. Rosen*, 409 F.3d 535, 545 (2d Cir.2005) (internal punctuation, quotations and citations omitted). Rather, "[t]he standard for withdrawing a guilty plea is stringent because 'society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice.'" *United States v. Doe*, 537 F.3d 204, 211 (2d Cir.2008) (quoting *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir.1997)).

■ The Second Circuit has specified several factors district courts should consider when determining whether a defendant has put forth a "fair and just reason" for withdrawing a plea. According to the Second Circuit, district courts "should consider, inter alia: (1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." *Doe*, 537 F.3d at 210 (citing *United States v. Couto*, 311 F.3d 179, 185 (2d Cir.2002)). Although prejudice to the government is one of the factors to be considered, "[t]he Government is not required to show prejudice when opposing a defendant's motion to withdraw a guilty plea where the defendant has shown no sufficient grounds for permitting withdrawal; however, the presence or absence of such prejudice may be considered." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992) (citations omitted).

■ A separate basis for withdrawal of a guilty plea occurs if a defendant received ineffective assistance of counsel. "Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir.2005) (citations omitted); *accord Doe*, 537 F.3d at 213.

In order to prevail on an ineffective assistance of counsel claim a defendant must first "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to satisfy the prejudice requirement for an ineffectiveness claim arising from the plea process, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

■ "A defendant is not entitled to an evidentiary hearing as a matter of right whenever he seeks to withdraw his guilty plea." *Gonzalez*, 970 F.2d at 1100. To be entitled to a hearing, "the defendant must present some significant questions concerning the voluntariness or general validity of the plea." *Id.* It is not enough if the allegations "merely contradict the record, are inherently incredible, or are simply conclusory." *Id.* (citations omitted).

Wilson's papers suggest that she is challenging her plea on two fronts. *See* Att'y Affirm. ¶ 14; Affidavit of Zomara Wilson, dated Sept. 14, 2011 (annexed to Att'y

Affirm.) ("Wilson Aff.") ¶ 16. First, Wilson argues that she is actually innocent of the charges. Att'y Affirm. ¶ 14. Second, Wilson argues that her plea was not voluntary or intelligent due to her counsel's deficient performance. *Id.* ¶¶ 24, 30. We deal with each claim separately. Before doing so, however, we describe the investigation conducted by Wilson's attorney at the time of her plea, Donna Newman, as the results of this investigation are critical to both of Wilson's arguments.

### B. *Investigation by Wilson's Attorney*

Prior to the plea, Newman arranged for an investigator to conduct interviews of a number of witnesses. Newman's investigator spoke with Crystal Corbitt,[2] a previous administrator at Anthem Manhattan, and James Cruz, the previous director of Admissions at Anthem Manhattan. Wilson Aff. ¶¶ 8, 13. The investigator also spoke to four students: Shanell Young, Charmaine Benjamin, Deonauth Ramnath, and Izaheidy Flores. *See id.* ¶ 11; Interview Report of Izaheidy Flores, dated Mar. 3, 2011 (annexed as Ex. E to Att'y Affirm.) ("Flores Interview").

Shannell Young is the person that Wilson referred to in her plea allocution.[3] *See* Interview Report of Shannell Young, dated Apr. 21, 2011 (annexed as Ex. C to Att'y Affirm.) ("Young Interview"). Young told the investigator that she had told Wilson that she did not have a GED diploma. *Id.* at 2. Wilson told her that she could take a skills examination instead. Young got an invoice in the mail informing her she had failed the skills examination but Wilson told her she had passed. *Id.* When Young questioned Wilson on this discrepancy, Wilson said "don't worry about it." *Id.* Wilson scheduled Young to meet with the financial aid office. *Id.* Some time later, Wilson informed Young that the school had been sent a copy of Young's GED. *Id.* at 3. Young told Wilson she did not have a GED. *Id.* Wilson showed Young a GED containing Young's name, address and social security number. *Id.* Young told Wilson that the date of the certificate, 2007, was wrong because it was when Young was still in high school. *Id.* Wilson stated "don't worry about it I can use it for a lot of reasons." *Id.* When Young asked if she could have the original, Wilson told her "don't worry, if anyone asks just say your uncle sent the copy in, that he found it and mailed it to the school." *Id.*

A second student, Deonauth Ramnath, said that when he enrolled at Amneth he possessed an online high school diploma that he believed to be valid. *See* Interview Report of Deonauth Ramnath, dated Mar. 3, 2011 (annexed as Ex. D to Att'y Affirm.) ("Ramnath Interview") at 3. However, after the investigation into the falsified documents, Ramnath learned that someone had placed a fake high school diploma from "Harriet Truman [sic] High School" in his file and that the online diploma was not used. *Id.* Ramnath did not state who might have placed the fake diploma into his file. But during a meeting with Anthem's president and another school official, they told him that Ms. Wilson had forged a high school diploma with his name on it. *Id.*

The third student mentioned by Wilson, Charmaine Benjamin, was described as "uncooperative" by Newman's investigator. *See* Interview Report of Charmaine Benjamin, dated Mar. 3, 2011 (annexed as Ex. F to Att'y Affirm.) ("Benjamin Interview")

---

**2.** Corbitt's last name is spelled as "Corbett" in some of Wilson's papers.

**3.** Young's first name is spelled as "Channel" or "Chanel" in the plea transcript and in some of Wilson's papers.

at 2. Benjamin had a valid GED certificate prior to enrolling at Anthem Institute. She told the investigator that Wilson was not involved in the financial aid application process. *Id.*

Wilson mentions these three student interviews in her affidavit. *See* Wilson Aff. ¶¶ 11, 16. However, there is a fourth student interview, of Izaheidy Flores, annexed to Wilson's papers. *See* Flores Interview. Flores told the defense investigator that during the application process she told Wilson that "she did not have a GED or a high school diploma but instead had taken an online course for her high school diploma." *Id.* at 2. According to Flores, Wilson told her that Anthem "was accepting the on-line course and that 'it's a good thing,'" because Wilson could get Flores enrolled into the school. *Id.* However, after Flores completed the program at Anthem, she never received her diploma from Anthem. *Id.* Instead, school officials contacted her, had her come in, and showed her "a copy of a high school diploma with [Flores'] name on it." *Id.* at 3. Flores told the officials "that she never attended nor ever heard of the high school that was on the diploma nor had ever seen the diploma she [ ] was being showed (sic)." *Id.* She told the officials what she had told Wilson and said that Wilson told her that she "checked and the school accepted the on-line course." *Id.*

In addition to the student interviews, Wilson also refers to the interviews with Corbitt and Cruz. Wilson Aff. ¶¶ 8, 13. Wilson does not provide transcripts of these interviews, however. Instead, she states that Corbitt "primarily implicate[d] both the president of Anthem Manhattan and the Office Manager." *Id.* ¶ 10. She says that Cruz "implie[d] that much of the information in the complaint was untrue and that admissions representatives had no access to student files, no authority to verify GEDs, and no involvement with financial aid." *Id.* ¶ 13. Wilson gives no further explanation as to what Cruz or Corbitt said. Wilson's attorney states that he has compact disks containing recordings of these interviews, Att'y Affirm. ¶ 6 n. 1, but he did not file them with the motion papers and has not made them available to the Government, Gov't Mem. at 17.

## C. Analysis

The first factor in the *Doe* three-part test—the amount of time that has elapsed between the plea and the motion, *see Doe,* 537 F.3d at 210—does not favor Wilson. More than two months elapsed from the time of the guilty plea until the first letter from Wilson in which she sought to challenge her plea. *See* May 3, 2011 Plea; Wilson Letter. As already noted, there is no requirement that the Government show prejudice that would result from the withdrawal of a guilty plea. *See Gonzalez,* 970 F.2d at 1100. Therefore, the only factor that remains to be considered is whether Wilson has successfully argued legal innocence. We will separately consider Wilson's claim of ineffective assistance of counsel.

### 1. Legal Innocence Argument

■ Wilson states that she is entitled to withdraw her plea because she was not "involved in falsely enrolling students without the proper credentials." Wilson Aff. ¶ 5. The problem with this claim is that Wilson admitted her involvement during her plea allocution under oath and case law is clear that "[t]he self-inculpatory statements [a defendant] made under oath at his plea allocution 'carry a strong presumption of verity,' and the court, in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the

defendant." *Maher*, 108 F.3d at 1530 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)); *accord Blackledge*, 431 U.S. at 73–74, 97 S.Ct. 1621 (statements made by the defendant during the plea allocution "constitute a formidable barrier in any subsequent collateral proceedings"). Notably, Wilson nowhere contends that she made false statements to the Court during her plea allocution. Thus, Wilson's legal innocence argument founders because she admitted her culpability when she pled guilty.

In her reply papers, Wilson relies heavily on *United States v. Jusino*, 254 Fed. Appx. 111 (2d Cir.2007). But that case is of no assistance to Wilson. In *Jusino*, the defendant sought to withdraw a guilty plea on the ground that he was innocent of the charge. *Id.* at 112. The charge was that the defendant had attempted to engage in a narcotics transaction. *Id. Jusino* rejected the defendant's argument that he could not have been guilty of the offense because he would not have been able to complete the drug transaction. *Id.* As part of its reasoning, the Court noted that the defendant's allocution showed that he had taken a "substantial step" towards the completion of the offense, *id.*, a necessary showing for an attempt charge, *see, e.g., United States v. Yousef,* 327 F.3d 56, 134 (2d Cir.2003). Wilson argues that because she did not take a "substantial step" toward falsifying documents, Def. Reply ¶ 14, she cannot be guilty. But unlike the defendant in *Jusino*, Wilson did not plead to an attempt charge but rather to aiding and abetting. As already noted, Wilson admitted in her allocution that she transmitted a false GED for a student to the financial aid office, knowing that it was false, and knowing the student would need a proper GED certificate in order to get financial aid. Her current assertion that she did not "intend to create and did not create" any false documents, Wilson Aff. ¶ 6, is thus irrelevant to the charge to which she pled.

### 2. *Ineffective Assistance of Counsel*

Wilson's main argument centers on her claim that Newman "misinformed her about the weight and quality of the evidence against her" as reflected in the witness interviews. Att'y Affirm. ¶ 14. More specifically, Wilson argues that she was "led to believe that each of these individuals inculpated her." *Id.* ¶ 15; *accord id.* ¶ 8. But Wilson gives no details as to the substance of any conversation between her and Newman on this point, making it impossible to conclude that Newman's conduct was ineffective. Certainly, Newman was highly effective in obtaining numerous interviews with individuals with knowledge of the events at issue. There is no evidence in the record that Newman believed that these interviews reflected the sum total of evidence that the Government could offer at trial. Thus, even if some interviews were not inculpatory, it would not necessarily indicate that it would have been inadvisable for Wilson to plead to a misdemeanor charge.

Nor can we say that Newman was ineffective in not disclosing the details of each of these interviews to Wilson (assuming, *arguendo*, that this claim by Wilson is true). Wilson argues that "not one of [the] students ever stated that defendant conveyed to them that she intended to create a false document on their behalf or submit a false document on their behalf." Att'y Affirm. ¶ 26. But whether Wilson ever "conveyed" her intention to the students is of no moment inasmuch it was not a necessary element of the crime that Wilson inform the students of her intention to aid and abet a fraudulent application for student financial aid.

Wilson says that Newman "led [Wilson] to believe that Ms. Young had implicated" Wilson, and contends that the Young inter-

view in fact "did not implicate [Wilson] in either falsifying a GED certificate, or allowing Ms. Young to enroll without a GED." Wilson Aff. ¶ 12. But Young's interview report in fact provides strong evidence—albeit circumstantial—that Wilson aided and abetted the fraud. Young stated that she knew the GED certificate in her file was not authentic and when Young asked if she could have the original, Wilson told her "don't worry, if anyone asks just say your uncle sent the copy in, that he found it and mailed it to the school." Young Interview at 3. Therefore, it would have been entirely accurate for Newman to state that the Young interview "implicated" Wilson or otherwise supported the Government's case.

Wilson does not specify what Newman told her about the other interviews prior to her decision to plead guilty. She merely states that she did not hear the tapes of the Corbitt and Cruz interviews until after pleading guilty, see Wilson Aff. ¶¶ 10, 13, and only read the Young, Benjamin, and Ramnath interviews after her plea, see id. ¶ 11. But these allegations do not show that Newman's performance was deficient. No reasonable attorney in reading the interviews would conclude that they are exculpatory. Nor would it be a deviation from proper practice to not have a client read or listen to the interviews prior to pleading guilty.

Wilson finds it significant that two students who were interviewed, Deonauth Ramnath and Charmaine Benjamin, did not say that Wilson "was going to create a false document on their behalf or submit a false document in order for the student to obtain financial aid." Id. ¶ 11. But once again, the mere fact that a particular witness did not have direct evidence of Wilson's wrongdoing does not mean that the witness's evidence would have been favorable to Wilson. Moreover, Ramnath's

statement is if anything unfavorable to Wilson. Ramnath suggests that Wilson was involved in placing a fake diploma in his folder as she accepted his online diploma when in fact it was unacceptable. See Ramnath Interview at 3. Wilson does not mention the Flores interview in her affidavit. However, the Flores interview is unfavorable to Wilson inasmuch as Flores said that Wilson told her that the school was accepting the online course and later a fake diploma was found in Flores's file. See Flores Interview at 2–3.

Wilson states that Cruz told the investigator that "admissions representatives had no access to student files, no authority to verify GEDs, and no involvement with financial aid." Wilson Aff. ¶ 13. Accepting Wilson's characterization of this interview as correct, the Court cannot say that the failure to disclose this interview to Wilson constituted ineffective assistance given the other evidence of Wilson's guilt and—most importantly—Wilson's own knowledge about her role in preparing and transmitting student files. Of course, during her allocution, Wilson herself stated that she "made an appointment for [a student] to meet with financial aid, for the purpose of her applying for financial aid and advised her that she would need to bring with her a GED certificate." May 3, 2011 Plea at 12.

Wilson states that Corbitt "primarily implicates" the president of Anthem. Att'y Affirm. ¶ 6; accord id. ¶ 28 (Corbitt "did not directly implicate defendant in anyway [sic]"). But where a defendant pleads to an aiding and abetting charge, it is hardly surprising that there are other individuals who are "primarily" implicated in the criminal conduct.

Additionally, Wilson suggests that the Government sees the weaknesses in its case because the Government acknowledges that the witness interviews "are only

*'largely inculpatory'*—not, importantly— *wholly inculpatory.*" Def. Reply ¶ 20 (emphasis in original). But even if the student interviews were merely "largely inculpatory," it would not show that Newman was ineffective for failing to have Wilson read them. In any event, as has already been described, the Government's evidence, including the interview with Young, in fact provided a strong circumstantial case that Wilson's allocution was accurate and that she was in fact guilty.

 Wilson finds it significant that the interviews "produced no direct evidence that defendant was involved" in criminal conduct. Att'y Affirm. ¶ 32. The Government is not required to have direct evidence to convict, however; circumstantial evidence is equally sufficient to sustain a conviction. *See, e.g., United States v. Abu–Jihaad,* 630 F.3d 102, 135 (2d Cir. 2010) ("[t]he law is well established that the government may secure conviction based solely on circumstantial evidence, provided it is sufficient to prove the elements of the charged crime beyond a reasonable doubt") (citation omitted). The nature of the evidence contained in the witness interviews was corroborative of the evidence contained in the criminal complaint. Moreover, there is nothing in the record to indicate that the persons whom Newman's investigator was able to interview constituted the sum total of evidence available to the Government. Indeed, the recounting of statements in the criminal complaint indicates that the Government had available to it far more witnesses whose testimony inculpated Wilson.

▇ In the end, "[t]he fact that a defendant has a change of heart prompted by his reevaluation of . . . the Government's case against him . . . is not a sufficient reason to permit withdrawal of a plea." *Gonzalez,* 970 F.2d at 1100 (citations omitted). The record before the Court does

not permit a finding that counsel's conduct fell below an objective standard of reasonableness in allegedly failing to disclose the details of the various interviews to Wilson. Accordingly, Wilson is not entitled to withdraw her guilty plea on the basis of ineffective assistance of counsel.

### III. *Conclusion*

For the foregoing reasons, Wilson's motion to withdraw her guilty plea (Docket # 42) is denied. Sentencing is set for January 17, 2012, at 10:00 a.m. in Courtroom 5–A, 500 Pearl Street, New York, New York.