22CA1921 Peo v Bloom 11-21-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1921
El Paso County District Court No. 21CR1788
Honorable Erin Sokol, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

David Laird Bloom,

Defendant-Appellant.

ORDER AFFIRMED

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

Philip J. Weiser, Attorney General, Emmy A. Langley, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

William Holzer, Alternate Defense Counsel, Littleton, Colorado, for Defendant-Appellant

¶ 1     Defendant, David Laird Bloom (Bloom), appeals the district court's order denying his motion to withdraw his guilty pleas. On appeal, Bloom contends the district court erred because (1) it should have appointed him conflict-free counsel and (2) he did not waive his right to counsel and had to represent himself. We reject his contentions and, therefore, affirm the order.

## I.    Background

¶ 2     In April 2021, Bloom was charged in El Paso County District Court Case No. 21CR1788 with two counts of first degree murder of R.B., two counts of attempted first degree murder of K.R., two counts of first degree assault on K.R., two counts of attempted first degree murder of D.P., two counts of first degree assault on D.P., one count of attempted first degree assault on E.D., one count of possession of a weapon by a previous offender, twenty-one crime of violence sentence enhancers, and three habitual criminal counts.[1]

---

[1] We take judicial notice of Bloom's separate but related appeal in this court, Case No. 22CA1920, which includes the district court record for El Paso District Court Case No. 20CR6100. *See People v. Sa'ra,* 117 P.3d 51, 56 (Colo. App. 2004) ("A court may take judicial notice of the contents of court records in a related proceeding.").

1

¶ 3      Approximately five months earlier, in November 2020, Bloom had been charged in El Paso County District Court Case No. 20CR6100 with one count of first degree murder of T.B., two counts of first degree assault on N.S., and three habitual criminal counts.

¶ 4      In August 2021, Bloom filed a motion in both cases alleging a conflict with his public defenders.  Bloom argued that the conflict was due to his counsel not meeting with him so that they could review discovery.  Bloom withdrew the motion at a September 15, 2021, hearing after the district court instructed defense counsel to meet with Bloom and review discovery.

¶ 5      On January 28, 2022, Bloom entered into plea agreements in both cases.  In Case No. 20CR6100, Bloom pled guilty to one count of second degree murder of T.B. and one crime of violence sentence enhancer.  In Case No. 21CR1788, Bloom pled guilty to one count of second degree murder of R.C. and one crime of violence sentence enhancer.  Related to both plea agreements, Bloom agreed that charges filed against him in El Paso County District Court Case Nos. 20CR5736 and 20CR5727 would be dismissed (but subject to restitution, if any).  And he agreed that his sentences for Case Nos. 20CR6100 and 21CR1788 could each range between thirty to forty

years and that they would run consecutively, which would "functionally result in a potential total sentence of 60 to 80 years in the Department of Corrections when considering both cases."

¶ 6 On May 23, 2022, Bloom filed in both cases a pro se motion to withdraw his guilty pleas before sentencing under Crim. P. 35(c) on the ground that his counsel were ineffective.[2] He requested new counsel.

¶ 7 The court held a hearing on May 25, 2022, to address both motions. Bloom's defense counsel were present. The court allowed Bloom to read into the record a reply that he had filed before the hearing. The court then addressed Bloom's argument that defense counsel had not visited him to review discovery. The court confirmed with both Bloom and defense counsel that at the September 15 hearing, Bloom had withdrawn the conflict motion.[3]

---

[2] Although Bloom filed his motion under Crim. P. 35(c), his counsel on appeal acknowledges that Bloom's request was governed by Crim. P. 32(d).

[3] The September 15, 2021, transcript is not included in the record. But there is no doubt that Bloom confirmed at the May 25, 2022, hearing that he withdrew his August 2021 motion at the September hearing.

¶ 8    Defense counsel, however, declined to substantively address Bloom's request to withdraw his guilty pleas, as Bloom had raised ineffective assistance of counsel and conflict issues. But the court declined to appoint new counsel because it determined that Bloom's allegations were either refuted by the record or conclusory, and, therefore, he had failed to prove his counsel had been ineffective or that his pleas had not been entered knowingly, voluntarily, and intelligently.

¶ 9    After denying Bloom's request to withdraw his guilty pleas, the court asked defense counsel whether they believed any conflict existed requiring a hearing under *People v. Bergerud*, 223 P.3d 686 (Colo. 2010), before moving forward to sentencing. Defense counsel did not believe any conflict existed.

¶ 10   On June 13, 2022, the court held a sentencing hearing in both cases; Bloom was sentenced to two separate forty-year terms in the custody of the Department of Corrections with his sentence in Case No. 20CR6100 running consecutively to his sentence in Case No. 21CR1788, for a total sentence of eighty years.

## II. Standard of Review and Applicable Law

¶ 11 We review a court's denial of a motion to withdraw a guilty plea for an abuse of discretion. *People v. Lopez*, 12 P.3d 869, 871 (Colo. App. 2000). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it applies an incorrect legal standard. *People v. Rodriguez*, 2022 COA 98, ¶ 12.

¶ 12 Crim. P. 32(d) authorizes a defendant to file a motion to withdraw a guilty plea before a sentence is imposed. *Kazadi v. People*, 2012 CO 73, ¶ 21. But a defendant is not entitled to withdraw a guilty plea as a matter of right. *People v. Chavez*, 730 P.2d 321, 327 (Colo. 1986). Under that rule, the defendant has the burden to demonstrate a fair and just reason for withdrawal. *Lopez*, 12 P.3d at 871. An allegation of ineffective assistance of counsel "at the time a guilty plea is entered may constitute a fair and just reason to withdraw the plea prior to sentencing." *Kazadi*, ¶ 21; *Lopez*, 12 P.3d at 871.

¶ 13 The Sixth Amendment right to counsel includes the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance of counsel claim, a defendant must prove by a preponderance of the evidence

that (1) defense counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defendant. *People v. Chalchi-Sevilla,* 2019 COA 75, ¶ 6 (citing *Strickland,* 466 U.S. at 687).

¶ 14    To establish deficient performance, a defendant must prove that counsel's performance "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. To establish prejudice, a defendant must prove that, but for counsel's deficient conduct, there is a reasonable probability that the outcome of the proceeding would have been different. *Davis v. People*, 871 P.2d 769, 772 (Colo. 1994). Because a defendant must establish both prongs, a court may resolve an ineffective assistance of counsel claim solely on the basis that a defendant failed in either regard. *People v. Karpierz,* 165 P.3d 753, 759 (Colo. App. 2006).

¶ 15    The constitutional right to effective assistance of counsel includes the right to conflict-free counsel. *People v. Martinez,* 869 P.2d 519, 524 (Colo. 1994). The right can therefore be violated by "representation that is intrinsically improper due to a conflict of interest." *People v. Castro,* 657 P.2d 932, 943 (Colo. 1983).

## III. Analysis

¶ 16    At the May 25 hearing, relying on *Lopez*, 12 P.3d at 871-72, the court denied Bloom's request for new appointed counsel. Even though Bloom's current counsel did not take a substantive position or participate at the hearing, we discern no abuse of discretion. Similar to *Lopez*, Bloom did not allege a colorable claim of ineffective assistance of counsel entitling him to a hearing and new appointed counsel.

¶ 17    In *Lopez*, the defendant requested new counsel to address his motion to withdraw his guilty plea because the defendant alleged his plea counsel was ineffective. *Id.* at 870. The defendant argued that a more lenient standard should apply when such a request is made in connection with a motion to withdraw a guilty plea before a conviction is final than when it is made in postconviction proceedings. *Id.* at 871.

¶ 18    The division disagreed. *Id.* It determined that in the context of Fed. R. Crim. P. 32(d), federal courts have held a defendant is not entitled to a hearing on a motion to withdraw a guilty plea "if the defendant's allegations [of ineffective assistance of counsel] merely contradict the record, are inherently incredible, or are simply

7

conclusory." *Lopez*, 12 P.3d at 871; *see also United States v. Wilson*, 828 F. Supp. 2d 679, 688 (S.D.N.Y. 2011), *aff'd*, 523 F. App'x 30 (2d Cir. 2013); *United States v. Shah*, 263 F. Supp. 2d 10, 25 (D.D.C. 2003), *aff'd and remanded,* 453 F.3d 520 (D.C. Cir. 2006). Without a colorable claim, the division concluded that a district court has discretion whether to appoint counsel related to a Rule 32(d) motion.

¶ 19 And Bloom's reliance on *Riley v. District Court*, 507 P.2d 464, 465 (Colo. 1973), is misplaced. There, the supreme court decided that because the defendant's counsel were likely "necessary witnesses adverse to the interests of [the defendant] at a hearing on [his] motion" there would be a conflict of interest. *Id.* at 466. Bloom contends the court in his case held a hearing, and consistent with *Riley*, counsel should have been appointed. But in our view, the May 25 hearing was to determine whether Bloom had alleged a colorable ineffective assistance of counsel claim. If the court had determined Bloom had raised a colorable claim necessitating an evidentiary hearing in which his public defenders would likely testify, we agree that this would present a very different situation. But absent a colorable ineffective assistance of counsel claim

8

necessitating adverse testimony from Bloom's counsel, *Riley* is inapplicable.[4]

¶ 20    As framed by Bloom, he does not appeal the court's conclusion that he did not establish a fair and just reason to set aside his guilty pleas. Instead, he contends that because his counsel had a conflict and he had established a colorable ineffective assistance of counsel claim, the district court should have appointed him conflict-free counsel. We discern no abuse of discretion on the part of the district court when it denied Bloom new appointed counsel because his allegations were either refuted by the record or conclusory.

¶ 21    As support for his claim, Bloom contends that his defense counsel were ineffective because (1) they did not physically review discovery with him, (2) they improperly pressured his mother and him to enter into the plea agreement, and (3) there were typographical errors in the plea agreement. He also alleges that

---

[4] Although *People v. Lopez*, 12 P.3d 869 (Colo. App. 2000), did not address a defendant's waiver of counsel, it was not necessary for the court to advise Bloom about the risks of self-representation and obtain from him a valid waiver of counsel when he failed to allege a colorable claim.

because the court asked the prosecution to respond to his pro se motion and held a hearing, this supports a colorable claim.[5]  We address each of Bloom's arguments in turn.

¶ 22    First, Bloom contends that defense counsel only reviewed discovery with him after he filed his August 2021 motion and that there is nothing in the record to support that his counsel met with him after the September 15 hearing.  We disagree.

¶ 23    As to discovery, the court verified with Bloom at the May 25 hearing that at the September 15 hearing he withdrew his August 2021 motion alleging a conflict with his counsel.  The court then verified whether defense counsel had met with Bloom after the September 15 hearing.  The court asked, "Were you able, then to meet with [Bloom] in person?"  Defense counsel responded, "I can remember at least two meetings in person with Mr. Bloom at different points . . . ."  Defense counsel noted that the pandemic initially made in-person meetings with Bloom difficult.  The court

_____

[5] We read nothing in Bloom's opening brief that seeks to challenge the court's findings that Bloom knowingly, voluntarily, and intelligently entered into the plea agreements.  We consider this issue to be abandoned on appeal.  *See People v. Carr,* 2016 COA 168, ¶ 14.

followed up, asking, "But did you have the opportunity to meet with him? You weren't restricted from meeting with him all that time?" Defense counsel responded, "No, we were not restricted from meeting with him. And then, you know, the Webex also changed. It started off pretty rough and then got much better. So, yes, there have been both [in person and Webex] meetings."

¶ 24 On appeal, Bloom contends that defense counsel did not confirm specifically whether they responded to Bloom's later requests to meet and review discovery. But Bloom does not identify any specific missed meetings or provide support for the assertion that he made additional requests to review discovery with his counsel. Indeed, the district court said that following the withdrawal of the August 2021 motion, "If [counsel not meeting with Bloom] was an issue thereafter, the defendant never raised it, and the assertion now as a basis to withdraw his plea is conclusory. It's unsupported by the record." And as the Attorney General points out, and we agree, Bloom fails the prejudice prong of *Strickland* because he does not support how his review of further discovery showed that he would not have entered into the plea agreement. *People v. Sifuentes*, 2017 COA 48M, ¶ 20 ("In the

11

context of a guilty plea, the prejudice prong [of the test for ineffective assistance of counsel] requires the defendant to 'show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'") (citation omitted).

¶ 25 Regardless, as the district court noted, Bloom was present at the preliminary hearings in both cases where the prosecution presented extensive evidence. And Bloom attended mediation on January 21, 2022 before entering into the plea agreement, which presumably included discussion of the prosecution's evidence as part of negotiations.

¶ 26 Second, Bloom contends that defense counsel coerced him to enter into the plea agreement by telling his mother that he had "no chance of winning," his sentences would run concurrently rather than consecutively, and he would be potentially eligible for a fifty percent reduction in his sentence. But the district court concluded that these allegations were conclusory or refuted by the record. Specifically, it pointed to Bloom's affidavit — submitted as part of his motion — conceding that he gave "permission" to defense counsel to speak to his mother. The court continued, "There is

nothing improper about Counsel expressing concern about the weaknesses in defendant's case to defendant's mother under the circumstances such as these." And the court reasoned that it was irrelevant whether Bloom's mother "misunderstood" the terms of the deal because the providency hearing supports that Bloom "did understand them, and the record reveals absolutely nothing to the contrary."

¶ 27 The court continued that, even assuming Bloom's mother thought his sentences would be concurrent, Bloom's own affidavit also refutes this point. It said, "In the defendant's affidavit, page 7, the defendant, prior to entering into his plea, admits, my Public Defenders advised me that the two pleas would run consecutively so I would face 60 to 80 years in prison."

¶ 28 More significantly, though, the court addressed the timing of when defense counsel spoke with Bloom's mother. In Case No. 20CA6100, the court found that Bloom signed the plea agreement for Case No. 20CA6100 on January 25, 2022, four days after the January 21 mediation and three days before the providency hearing on January 28. The court acknowledged that Bloom was now contesting the date he signed the agreement, but it noted that

Bloom's signature, initials, and the date were all in black ink; while his attorneys, who also signed on January 25, used blue ink; and the prosecutor, who also used blue ink, signed on January 26. Bloom alleged that defense counsel "coerced his mother on the night before he entered into his guilty pleas," so on January 27. But the court reasoned that Bloom had already decided to enter into the plea agreement before counsel's alleged conversation with his mother, "making that conversation even less material to defendant's voluntary entry of his guilty plea[s]."

¶ 29     We acknowledge that Bloom did not date the plea agreement under his signature in this case. Even assuming Bloom signed this plea agreement later than January 25, the district court's finding that defense counsel's discussion with his mother was not material to Bloom's decision to enter into the plea agreement in Case No. 20CR6100 equally applies to this case. By agreeing to the Case No. 20CR6100 plea agreement that his sentences in both cases would run consecutively, Bloom cannot now claim his counsel failed to advise him as to either plea agreement or that he did not understand the terms in each.

14

¶ 30    Third, Bloom contends the typographical error in the plea agreement supports that counsel were ineffective.  Paragraph 14(c) of the plea agreement originally stated that if the court found extraordinary aggravating circumstances, other than those identified in other paragraphs, Bloom's prison term could be greater than the presumptive range up to double the maximum term, "making a term as long as 3 years."  But the number three was marked out in blue ink and replaced with a handwritten number forty-eight.

¶ 31    At the May 25 hearing, the court highlighted that it noticed this typographical error at the providency hearing.  And the court further indicated that defense counsel confirmed at the providency hearing that they had advised Bloom the possible maximum sentence was forty-eight, not three, years.  This was followed up with the court at the May 25 hearing reading from the providency hearing transcript:

> THE COURT: Sir, because you are agreeing that this is a crime of violence, your plea is a mandatory 16-to 48-year range for the Department of Corrections.  Do you understand that?
>
> THE DEFENDANT: Yes.

15

> THE COURT: Okay. And you understood that there's a typographical error in this section of the plea paperwork that says three years. Actually, for extraordinary aggravating circumstances, your sentence can be as long as 48 years. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you understand that I'm making the change in the plea paperwork as well?
>
> THE DEFENDANT: Yes.

The court further read from the providency hearing transcript, confirming Bloom understood the counterpart term in the plea agreement in Case No. 20CR6100 was also corrected to forty-eight years. Based on the providency hearing transcript, Bloom's reliance on the typographical error cannot be the basis for an ineffective assistance of counsel claim.

¶ 32 Finally, Bloom argues that his claim is colorable because the court required the prosecution to file a response to his motion. But Crim. P. 32(d) does not delineate specific procedures for the court to follow when deciding such a motion. It simply states that "[a] motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended." In contrast, Crim. P. 35(c)(3)(V) states that if the court

16

does not summarily deny the motion, "the court shall cause a complete copy of said motion to be served on the prosecuting attorney if one has not yet been served by counsel for the defendant" and "[i]f the defendant has requested counsel be appointed in the motion, the court shall cause a complete copy of said motion to be served on the Public Defender." *See People v. Higgins*, 2017 COA 57, ¶5. But these provisions in Crim. P. 35 apply only to motions based on "one or more of the grounds enumerated in section (c)(2) of *this* Rule," referring to Rule 35. Crim. P. 35(c)(3) (emphasis added). Thus, to the extent the court orders a prosecutor to respond to a Rule 32(d) motion, the appointment of counsel provision in Rule 35(c)(3)(V) does not apply to relief requested under Rule 32(d). *See People in Interest of M.K.D.A.L.*, 2014 COA 148, ¶ 5.

## IV. Conclusion

¶ 33    The order is affirmed.

JUDGE FOX and JUDGE SCHOCK concur.